1

2   W. WEST ALLEN
    Nevada Bar No. 5566
3   wallen@lrrlaw.com
    LEWIS ROCA ROTHGERBER LLP
4   3993 Howard Hughes Parkway, Suite 600
    Las Vegas, Nevada  89109
5   Telephone:  (702) 949-8200
    Facsimile:  (702) 949-8398
6
    E. LEIF REID
7   Nevada Bar No. 5750
    lreid@lrrlaw.com
8   LEWIS ROCA ROTHGERBER LLP
    50 West Liberty Street
9   Suite 410
    Reno, NV 89501-1922
10  Telephone: (775) 321-3415
    Facsimile: (775) 823-2929
11
    THEODORE J. ANGELIS,
12  Admitted pro hac vice
    theo.angelis@klgates.com
13  DOUGLAS B. GREENSWAG
    Admitted pro hac vice
14  douglas.greenswag@klgates.com
    K&L GATES LLP
15  925 4th Avenue, Suite 2900
    Seattle, WA  98104
16  Telephone:  (206) 370-8101
    Facsimile:  (206) 370-6006
17
    *Attorneys for Defendant Square, Inc.*
18

19              UNITED STATES DISTRICT COURT

20                  DISTRICT OF NEVADA

21

22  **UNWIRED PLANET LLC, a Nevada limited**      CASE NO. 3:13-CV-00579-RCJ-WGC
    **liability company**
23                                                **DEFENDANT SQUARE, INC.'S NOTICE**
                    **Plaintiff,**                **OF MOTION AND MOTION TO**
24                                                **TRANSFER VENUE PURSUANT TO 28**
                     **vs.**                      **U.S.C. § 1404(a)**
25
    **SQUARE, INC., a Delaware corporation**
26
                    **Defendant.**
27

28

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ............................................................................................ 1

II.  FACTUAL AND PROCEDURAL BACKGROUND ......................................... 2

    A.   Square's Use of Unwired Planet's Information Provided Via Communications and Unwired Planet's Website ................................... 2

        1.   Unwired Planet's June 24, 2013 Letter to Square's General Counsel ............................................................................... 2

        2.   Unwired Planet's August 20, 2013 Email From Unwired Planet and Square's Resulting Investigation at UnwiredPlanet.com ...... 3

        3.   Unwired Planet's Website Is Devoted To Patent Enforcement.... 3

    B.   The Forum Selection Clause on <UnwiredPlanet.com> ........................ 4

    C.   Square's Rebuffed Request for Additional Information and the Subsequent Meeting With Unwired Planet in Palo Alto, California ...... 4

    D.   Unwired Planet Initiates This Action ..................................................... 5

    E.   The Evidence and Potential Witnesses Relevant to this Action Are Located in the Northern District of California ........................................ 6

III. ARGUMENT ................................................................................................ 7

    A.   The *Atlantic Marine* Standard for Motions to Transfer ........................ 7

    B.   Square's Motion to Transfer Based on Unwired Planet's Forum Selection Clause ................................................................................... 7

        1.   Judicial Standard ......................................................................... 7

        2.   This Action Might Have Been Brought in the Northern District of California ................................................................................... 9

        3.   The Parties' Forum Selection Clause is Valid and Governs this Action ............................................................................................ 9

            a.   The Parties Are Bound By Unwired Planet's Forum Selection Clause, Which Exclusively Selects the Northern District of California as the Forum for this Action ............................................................................... …9

            b.   The Forum Selection Clause Governs this Action Because It "Relat[es] to the Materials" ............................ 10

        4.   Unwired Planet Cannot Avoid Its Own Forum Selection Clause Because It Cannot Show that the Public-interest Factors Overwhelmingly Disfavor a Transfer ......................................... 12

       a.    Court Congestion in the Two Forums Favors Transfer ... 12

       b.    The Local Interest in Resolving Disputes Favors Transfer .................................................................................. 13

C.    Motion to Transfer Based on Traditional "Convenience of the Parties and Witnesses" and the "Interests of Justice" Factors .......................... 14

   1.    Judicial Standard .......................................................................... 14

   2.    This Action "Might Have Been Brought" in the Northern District of California .................................................................... 15

   3.    The Private-Interest Factors Weigh In Favor of Transferring this Case to the Northern District of California .............. 15

       a.    The Lack of Contacts Relating to the Plaintiff's Cause of Action in the Chosen Forum Favors Transfer ................. 15

       b.    The Ease of Access to Sources of Proof in the Northern District of California Favors Transfer ........................... 16

       c.    The Parties' Lack of Contacts with the District Favors Transfer .................................................................................. 17

       d.    The Lack of the Availability of Compulsory Process to Compel Attendance of Unwilling Non-Party Witnesses in this District Favors Transfer ........................................... 18

           i.    Evidence Regarding the Hypothetical Negotiation and Damages ...................................................... 19

           ii.    Evidence Regarding Conception, Reduction to Practice, and the Scope of the Inventions Within the Asserted Claims ................................................ 21

           iii.    Evidence Regarding the Hardware and Operating Systems on which the Accused Products Run ....... 25

       e.    The Differences in the Costs of Litigation in the Two Forums Favor Transfer ...................................................... 25

       f.    The State that is Most Familiar with the Governing Law is a Neutral Factor ...................................................... 26

       g.    The Plaintiff's Choice of Forum is Entitled to Little Weight .................................................................................. 26

       h.    The Convenience of Party Witnesses Favors Transfer .... 28

   4.    The Public-Interest Factors Favor Transfer ................................ 29

       a.    Court Congestion in the Two Forums Favors Transfer ... 29

       b.    The Local Interest in Resolving Disputes Favors Transfer .................................................................................. 29

IV.  CONCLUSION ................................................................................................... 30

1    Defendant Square, Inc. ("Square" or "Defendant") respectfully moves this Court for an Order

2    transferring this action to the United States District Court for the Northern District of California

3    pursuant to 28 U.S.C. § 1404(a).  This Motion is based on the following Memorandum of Points and

4    Authorities, the supporting declarations and exhibits, and the pleadings on file with the Court.[1]

5                    **MEMORANDUM OF POINTS AND AUTHORITIES**

6    **I.    INTRODUCTION**

7        There are two independent bases for transferring to the U.S. District Court for the Northern

8    District of California.  ***First***, Unwired Planet LLC ("Plaintiff" or "Unwired Planet") and Square

9    previously agreed to a forum selection clause, *which Unwired Planet drafted and required Square to*

10   *accept* as a condition of accessing, downloading, and using information on the Unwired Planet

11   website.  That website is devoted to the patents and litigation strategy Unwired Planet is executing in

12   this case.  (Indeed, the website is the location where Unwired Planet describes this case and provides

13   regular updates regarding it and other patent infringement actions it is pursuing.)  Under the Supreme

14   Court's recent opinion in *Atlantic Marine Constr. Co., Inc. v. U.S. Dist. Ct. for the W. Dist. Of Tex.*,

15   __ S. Ct. __, No. 12-929, 2013 WL 6231157 (U.S. Dec. 3, 2013), this forum selection clause controls

16   and requires transfer of this action to the forum Unwired Planet itself selected:  The Northern District

17   of California.  In particular, the Supreme Court clarified that a court applies a different standard and

18   different burden of proof under § 1404(a) when a motion to transfer is based on a forum selection

19   clause.  *Id.* at *12-13.  Under that standard, this Court must transfer this case to the Northern District

20   of California unless Unwired Planet demonstrates that the "public-interest factors" courts consider

21   when performing the traditional § 1404(a) analysis "overwhelmingly disfavor a transfer."  *Id.* at *11-

22   *13.  This Unwired Planet cannot do.[2]

23   _____

24   [1] Concurrent with this motion, Square has filed a motion to dismiss pursuant to Fed. R. Civ. P.
25   12(b)(6).  Square respectfully requests the Court address the motion to transfer first because, if
     granted, this Court need not rule on the motion to dismiss.

26   [2] Given the U.S. Supreme Court's recent decision in *Atlantic Marine*, Square has divided its
27   § 1404(a) motion into two parts.  The first part applies the § 1404(a) standard under *Atlantic Marine*
     and seeks transfer pursuant to the parties' forum selection cause.  The second part applies the
     traditional § 1404(a) standard and seeks transfer pursuant to the balance of private- and public-
28   interest factors.

                                            1

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Second**, the traditional factors this Court considers when addressing a typical motion to transfer under 28 U.S.C. § 1404(a) weigh strongly in favor of transfer here. Under the traditional § 1404(a) standard, the Court balances private- and public-interest factors to determine whether to transfer the case.  In this instance, the private-interest factors weigh in favor of transfer because: (1) there is little, if any, relationship between this dispute and the District of Nevada; (2) the overwhelming bulk of evidence and most of the key party witnesses are located in the Northern District of California; (3) there are many critical non-party witnesses who are not subject to compulsory process in the District of Nevada but who are subject to such process in the Northern District of California; and (4) Unwired Planet has limited contacts with this District, the bulk of which it created relatively recently.  The public-interest factors likewise weigh in favor of transfer, including: (1) the fact that this Court suffered a judicial emergency that Congress has only recently addressed and, consequently, it is more congested than the Northern District of California; and (2) the fact that the only local interest in this case is minimal in that it is based solely on Unwired Planet's recent move to the District.  Thus, under either of the § 1404(a) standards applicable to this case (the *Atlantic Marine*-forum selection clause standard or the traditional standard), transfer to the Northern District of California is warranted.

## II.      FACTUAL AND PROCEDURAL BACKGROUND

### A.      Square's Use of Unwired Planet's Information Provided Via Communications and Unwired Planet's Website

Before Unwired Planet filed this lawsuit, it sent Square vague and incomplete information regarding approximately 2,400 patents and patent applications that it asserted may be relevant to Square technology.  Based on Unwired Planet's information and assertions, Square visited Unwired Planet's website to access, download, and use materials from that website in order to understand and respond to Unwired Planet's assertions.

#### 1.      Unwired Planet's June 24, 2013 Letter to Square's General Counsel

Square's General Counsel received a letter dated June 24, 2013 from Unwired Planet. Declaration of Kirupa Pushparaj ("Pushparaj Decl.") Ex. A.  In that letter, Unwired Planet suggested the parties enter into a licensing arrangement for unnamed patents within Unwired Planet's portfolio of over 2,400 patents and patent applications, a list of which was included.  *Id.*  The letter failed to

2

identify a single patent that Square allegedly infringed, let alone provide any explanation of such infringement.  *Id.*

### 2.   Unwired Planet's August 20, 2013 Email From Unwired Planet and Square's Resulting Investigation at UnwiredPlanet.com

On August 20, Unwired Planet sent Square an email from <unwiredplanet.com>.  *Id.* Ex. B. That email attached a copy of the June 24, 2013 letter, but it did not include the list of Unwired Planet's patents or any other information.  *Id.*  Square's General Counsel forwarded the email to Square's Intellectual Property Counsel, Kirupa Pushparaj.  *Id.* ¶ 3.  Mr. Pushparaj reviewed the email, and given (1) Unwired Planet's assertion that it possessed patents that were relevant to Square's products without specifically identifying any patents; and (2) Unwired Planet's reference to a press release and other information that it had not included in the email, Mr. Pushparaj visited Unwired Planet's website, at <unwiredplanet.com>, to identify the missing information and learn more about Unwired Planet and its patents.  *Id.* ¶ 4.

### 3.   Unwired Planet's Website Is Devoted To Patent Enforcement

Unwired Planet's website is devoted almost exclusively to promoting Unwired Planet's patent portfolio and its enforcement of its patent rights.  It prominently features a list of its more than 2,400 patents and patent applications.  Declaration of Theodore Angelis ("Angelis Decl.") ¶¶ 3-6 Exs. A-E. The website does not offer any goods or services for sale.  *Id.*  Instead, the website refers to Unwired Planet's *patents* as its "[p]roducts."  *Id.* ¶ 4, Ex. B.  The website lists all of those "[p]roducts," and it makes clear that Unwired Planet is in the business of seeking licenses from companies such as Square through licensing requests and litigation.  *See, e.g.*, *id.* ("Unwired Planet is pursuing a multi-pronged patent monetization strategy, which ranges from direct licensing of its patents, litigation, and partnering with an Intellectual Property specialist.").  The website further provides detailed summaries and updates regarding Unwired Planet's "pending enforcement actions," including this case and the action entitled *Unwired Planet LLC v. Apple, Inc.*, No. 3:12-cv-00505-RCJ-VPC (D. Nev.) ("Apple Action") previously pending before the Court.[3]  *Id.* ¶ 8, Ex. G.

---

[3] Indeed, Unwired Planet used its website to comment on this Court's order transferring the Apple Action.  *Id.* Ex. G.

3

While on Unwired Planet's website, Mr. Pushparaj viewed and downloaded the list of Unwired Planet's patents and patent applications, which identified the same patents and patent applications included as an appendix to Unwired Planet's June 24, 2013 letter.  Pushparaj Decl. ¶¶ 4-5, 9, 11.  He also reviewed other materials and information on Unwired Planet's website, including information regarding Unwired Planet's enforcement actions.  *Id.* ¶¶ 5, 9.  Over the course of the next few weeks, Mr. Pushparaj visited the website on additional occasions, viewing and downloading materials each time.  *Id.* ¶¶ 4, 9.  He used the materials to better understand the company, its patent enforcement and litigation strategy, its history of enforcement actions, the current status of those actions, and whether any parties had taken licenses to Unwired Planet's patents.  *Id.* ¶ 10.

**B.  The Forum Selection Clause on <UnwiredPlanet.com>**

Unwired Planet made the downloading and use of the information on its website expressly subject to its "Terms and Conditions" at <http://www.unwiredplanet.com/terms-and-conditions>. Pushparaj Decl. Ex. E; Angelis Decl. Ex. F. In particular, the Terms and Conditions provide:

- "***By downloading***, installing, ***or using any Materials***, ***you agree*** to these Terms and Conditions" and "[i]f you do not agree to these Terms and Conditions, you may not use, access, download, or install the Materials."  Pushparaj Decl. Ex. E (emphasis added).

- "***Materials***" means "materials on this Website ("Site") ***including all information, documents***, communications, ***files***, text, graphics, software, and ***products*** included on this Site (collectively "***Materials***")."  *Id.* (emphasis added).

The Terms and Conditions contain a mandatory and exclusive forum selection clause through which Unwired Planet requires cases to be brought in the Northern District of California and a choice of law clause through which Unwired Planet selects California law.  *Id.*  These clauses provide:

> ***Any claim relating to the Materials*** will be governed by the laws of the State of California, notwithstanding any conflicts of law principles, and the United States of America. ***You and Unwired Planet agree that and hereby submit to the exclusive personal jurisdiction and venue of the*** Supreme Court of Santa Clara County and the ***United States District Court of the Northern District of California with respect to any such claim***.  *Id.* (emphasis added).

**C.  Square's Rebuffed Request for Additional Information and the Subsequent Meeting With Unwired Planet in Palo Alto, California**

4

After reviewing the materials on Unwired Planet's website, Mr. Pushparaj remained unable to discern which, if any, of the 2,400 patents on the list he reviewed and downloaded from Unwired Planet's website could possibly relate to Square's technology.  Pushparaj Decl. ¶ 6.  He therefore requested additional information from Unwired Planet regarding any allegedly relevant patents.  *Id.* ¶ 6, Ex. C.  In his request, he pointed out that Unwired Planet's "original letter references a portfolio that spans over 50 pages and lists the titles of over 2400 patents and applications, without providing any specific indication of patents [Unwired Planet] think[s] may be relevant to Square."  *Id.*  He further explained that Square was unable to assess the relevance of Unwired Planet's patents without further information from Unwired Planet about the specific patents claimed to be at issue.  *Id.*  On August 29, 2013, Unwired Planet refused to provide Mr. Pushparaj with any additional information unless Square entered into a nondisclosure agreement with Unwired Planet.  *Id.* ¶ 7, Ex. D.

After Unwired Planet rebuffed Square's requests for additional information, Mr. Pushparaj again visited Unwired Planet's website to search for some clarity.  *Id.* ¶ 9.  On Square's behalf, Mr. Pushparaj again viewed and downloaded the list of Unwired Planet's patents and other information from Unwired Planet's website.  *Id.* ¶¶ 9, 11.

On September 26, 2013, Unwired Planet met with Square at the offices of Unwired Planet's counsel in Palo Alto, California, a location requested by Unwired Planet.  *Id.* ¶ 8.  After the meeting, Mr. Pushparaj once again visited Unwired Planet's website to view and download more information, documents, and files describing Unwired Planet's patents and its enforcement actions.  *Id.* ¶ 9.  In addition, he once again reviewed and downloaded the list of over 2,400 patents and patent applications on the website.  *Id.*

**D.  Unwired Planet Initiates This Action**

Soon after the California meeting, Unwired Planet filed this action against Square.  Dkt. 1 (Compl.).  Unwired Planet's Complaint asserts claims against Square for direct, indirect, and willful

infringement of U.S. Patent Nos. 7,711,100 ("the '100 Patent"), 7,376,433 ("the '433 Patent") and 8,275,359 ("the '359 Patent") (collectively, the "Asserted Patents").[4]  *Id.* ¶¶ 19-23.

### E.   The Evidence and Potential Witnesses Relevant to this Action Are Located in the Northern District of California

The evidence and witnesses relevant to this action are in the Northern District of California, not in this District.  The actions alleged to be infringing occurred in the Northern District of California, and as a result, essentially all evidence relevant to Square's alleged infringement is located at Square's headquarters in the Northern District of California.  *See generally* Declaration of Michael Stratton ("Stratton Decl.) ¶¶ 7-8; Declaration of Naeem Ishaq ("Ishaq Decl.") ¶¶ 2-5.  Square's headquarters have always been in the Northern District of California, development of the accused technology occurred in the Northern District of California, and Square's documents are located in the Northern District of California.  *Id.*; Stratton Decl. ¶¶ 3-8.  Square's third-party witnesses are also located primarily in the Northern District of California.  Angelis Decl. ¶¶ 9, 11-12, 23-32, Exs. H, K-P; Declaration of Christina Goodrich ("Goodrich Decl.") ¶¶ 5-17, 19-20.

In addition, the Asserted Patents were prosecuted by attorneys who were and are primarily located in the Northern District of California.  Goodrich Decl. ¶¶ 5-17, 19-20.  These attorneys were retained by Openwave Systems ("Openwave"), which owned the Asserted Patents while they were being prosecuted.  Dkt. 1 Exs. D-F.  Openwave was located in the Northern District of California and continued to own the patents until its demise in April 2012, at which point it spun off all of its non-patent assets and operations and changed its name to Unwired Planet, Inc.  *Id.*; Angelis Decl. ¶ 12, Ex. L-M.  Unwired Planet, Inc. remained located in the Northern District of California until late 2012, and other separate companies, Openwave Messaging and Openwave Mobile, were created in and remain based in the Northern District of California.  *Id.*, Ex. N-P.

This District, on the other hand, has little if any connection to this action.  The only connection to this District is Unwired Planet's current location, which this Court previously noted

---

[4] The Asserted Patents are all found on the list that Square (1) viewed and downloaded from Unwired Planet's website and (2) used to investigate Unwired Planet's claims and its strategy for targeting companies such as Square.  Pushparaj Decl. ¶ 5.

1    was insufficient because:  (1) "[T]he witnesses and evidence are located primarily, if not entirely, in

2    California, in which state it will be more convenient for the parties to litigate"; (2) "Few if any of

3    Plaintiff's Reno employees nor Unwired Planet, Inc.'s new Reno employees will be witnesses in the

4    present case"; and (3) "Unwired Planet, Inc.'s existing California employees, who have direct

5    knowledge of the patent issues in this case will be [witnesses]."  Angelis Decl. Ex. I.

6    **III.    ARGUMENT**

7          **A.    The *Atlantic Marine* Standard for Motions to Transfer**

8              In *Atlantic Marine*, the Supreme Court recently clarified that a § 1404(a) motion seeking to

9    transfer an action based on a forum selection clause is subject to a different standard than a traditional

10   § 1404(a) motion.  *Atlantic Marine Constr. Co., Inc. v. U.S. Dist. Ct. for W. Dist. of Tex.*, No. 12-929,

11   2013 WL 6231157, at *11-12 (U.S. Dec. 3, 2013).  Under the *Atlantic Marine* standard, a court must

12   enforce a forum selection clause and grant transfer unless the plaintiff meets its burden of showing

13   that the public-interest factors (such as court congestion and the local interest in resolving localized

14   controversies in the forum) "overwhelmingly disfavor a transfer."  *Id.* at *13.  This standard differs

15   markedly from the standard for a traditional § 1404(a) motion, under which a court evaluates

16   numerous factors, including private-interest factors (such as the contacts between the plaintiff's

17   claims and the forum, the ease of access to sources of proof, the parties' contacts with the forum, and

18   the availability of compulsory process over non-party witnesses) *and* public-interest factors (such as

19   court congestion and the local interest in resolving localized controversies in the forum) to determine

20   whether a transfer is appropriate.  *Id.*  As set forth below, Square prevails under both standards.

21        **B.    Square's Motion to Transfer Based on Unwired Planet's Forum Selection Clause**

22               **1.    Judicial Standard**

23              In *Atlantic Marine*, the Supreme Court held that the proper procedural vehicle for seeking to

24   transfer an action pursuant to a forum selection clause is a § 1404(a) motion.[5]  2013 WL 6231157, at

25   _____

26   [5] In doing so, the Supreme Court rejected the two prevailing approaches for addressing a forum
     selection clause.  Under one approach, which prevailed in the Ninth Circuit, a party seeking to
27   enforce a forum selection clause could bring a motion to dismiss for improper venue under Fed. R.
     Civ. P. 12(b)(3) or motion to transfer for improper venue under 28 U.S.C. § 1406.  *See Doe 1 v. AOL*
28   *LLC*, 552 F.3d 1077, 1081 (9th Cir. 2009).  Under the other approach, the procedural vehicle for
     enforcing a forum selection clause was a § 1404(a) motion, but the forum selection clause was

*4.  The Court explained, however, that the standard for a forum selection clause-based § 1404(a)

motion is not the same as the standard applied to a traditional § 1404(a) motion.  *Id.* at *11.  When a

forum selection clause is in issue: (1) "the plaintiff's choice of forum merits no weight"; and (2) the

court must deem the traditional § 1404(a) *private*-interest factors to "weigh entirely in favor of the

preselected forum."  *Id.* at *11-12.  Further, while a court may consider the *public*-interest factors

while evaluating a § 1404(a) motion to transfer under *Atlantic Marine*, the plaintiff bears the burden

of showing they "*overwhelmingly* disfavor transfer."  *Id.* (emphasis added).  As the Supreme Court

explained, the district court "should transfer the case unless extraordinary circumstances unrelated to

the convenience of the parties clearly disfavor a transfer."  *Id.* at *4.

Thus, under *Atlantic Marine*, a court presented with a § 1404(a) motion based on a forum

selection clause should proceed as follows:  First, the court determines, as it does under the

traditional § 1404(a) standard, whether the action "might have been brought" in the transferee

district.  *See* 28 U.S.C. § 1404; *Atlantic Marine*, 2013 WL 6231157, at *9.  The moving party makes

this showing by establishing that the transferee district possesses subject matter jurisdiction over the

action, personal jurisdiction over the defendant, and that venue would have been proper in the

transferee district.  *Hoffman v. Blaski*, 363 U.S. 335, 343-44 (1960).  Second, if the action "might

have been brought" in the transferee district, the court examines the "public-interest" factors, but

grants the motion to transfer unless the *plaintiff* demonstrates that such factors "overwhelmingly

disfavor transfer."  *Atlantic Marine*, 2013 WL 6231157, at *13.  As the Supreme Court explained,

"the practical result [of this Court's analysis] is that forum-selection clauses should control except in

unusual cases."  *Id.* at 12.

In Section III.B. below, Square applies *Atlantic Marine*'s modified § 1404(a) standard and

demonstrates that it warrants transfer.  In Section III.C. below, Square applies the traditional

§ 1404(a) standard.  Although the Court need not reach that analysis, even if it did, the traditional

balancing of both private- and public-interest factors would warrant the same result.

---

considered as one of numerous private-interest factors.  *See, e.g.*, *In re Atlantic Marine Const. Co., Inc.*, 701 F.3d 736, 743 (5th Cir. 2012), *rev'd sub nom. Atlantic Marine Const. Co., Inc. v. U.S. Dist. Court for W. Dist. of Texas*, No. 12-929, 2013 WL 6231157 (U.S. Dec. 3, 2013).

**2.      This Action Might Have Been Brought in the Northern District of California**

The Northern District of California has subject matter jurisdiction over this action, personal jurisdiction over Square, and venue is proper because Square resides in the Northern District of California. *See* 28 U.S.C. § 1400(b); 28 U.S.C. § 1391(c). Accordingly, this action "might have been brought" in the Northern District of California.

**3.      The Parties' Forum Selection Clause is Valid and Governs this Action**

Unwired Planet makes the publicly available materials included on its website subject to the Terms and Conditions that it drafted. Angelis Decl. Ex. F; Pushparaj Decl. Ex. E. These materials pertain to Unwired Planet's IP portfolio and what Unwired Planet refers to as "The Business of IP" where "Patents Themselves are Products." Angelis Decl. ¶ 4, Ex. B. The website also contains a detailed discussion of Unwired Planet's strategy to "monetize" its patents through litigation, including specific references to this lawsuit. *Id.* ¶¶ 3-6, 8, Exs. A-B, D-E, G.

The Terms and Conditions for <unwiredplanet.com> contain a mandatory forum selection clause that provides for "exclusive personal jurisdiction and venue" in the Northern District of California for "all" claims "relating to the Materials" accessed on <unwiredplanet.com>. *See supra* pp. 10-11. Those "Materials" include the list of patents and other information, documents, and files (such as descriptions of Unwired Planet's patents and press releases and discussions of Unwired Planet's litigation) that Square repeatedly accessed, used, and downloaded during the run-up to this action. *Id.*

**a.      *The Parties Are Bound By Unwired Planet's Forum Selection Clause, Which Exclusively Selects the Northern District of California as the Forum for this Action***

The forum selection clause contained in Unwired Planet's Terms and Conditions is binding, valid, and mandatory. As the terms recite, Unwired Planet's forum selection clause governs all third party access to, use of and/or downloading of the "Materials" on its website, including all of the information and documents downloaded by Square. Pushparaj Decl. Ex. E; Angelis Decl. Ex. F. These Terms and Conditions expressly state: "If you do not agree to these Terms and Conditions, you may not use, access, download, or install the Materials." Pushparaj Decl. Ex. E; Angelis Decl. Ex. F. Accordingly, Square accepted Unwired Planet's Terms and Conditions, including the forum

1    selection clause, when it accessed, used, and downloaded Materials.  *See Simonoff v. Expedia, Inc.*,

2    643 F.3d 1202, 1205 (9th Cir. 2011) (holding that users of Expedia's website were bound to the

3    forum selection clause within the terms and conditions to which they agreed when using that

4    website).

5             The language of Unwired Planet's forum selection clause is mandatory and exclusive, as it

6    provides:  "You and Unwired Planet agree that and hereby submit to the exclusive personal

7    jurisdiction and venue of the Superior Court of Santa Clara County and the United States District

8    Court for the Northern District of California . . . ."  Pushparaj Decl. Ex. E; Angelis Decl. F.  *See*

9    *Docksider, Ltd. v. Sea Tech., Ltd.*, 875 F.2d 762, 764 (9th Cir. 1989) (concluding that forum selection

10   clause is mandatory based on language stating "venue of any action brought hereunder shall be

11   deemed to be in . . . Virginia"); *Manetti-Farrow, Inc. v. Gucci Am., Inc.*, 858 F.2d 509, 511 (9th Cir.

12   1988) (enforcing forum selection clause that provided "the Court of Florence has sole jurisdiction").

### b. The Forum Selection Clause Governs this Action Because It "Relat[es] to the Materials"

13

14            The plain language of Unwired Planet's forum selection clause mandates that all actions,

15   including this one, "relating to the Materials" be brought in the Northern District of California.

16   Federal law governs the construction of a forum selection clause.  *See Simonoff*, 643 F.3d at 1205;

17   *see also Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 588-89, 111 S. Ct. 1522, 1525 (1991);

18   *Manetti-Farrow*, 858 F.2d at 512.  Under Federal law, "[t]he 'plain language of the contract should

19   be considered first . . . with the understanding that the 'common or normal meaning of language will

20   be given to the words of a contract unless circumstances show that in a particular case a special

21   meaning should be attached to it."  *Simonoff*, 643 F.3d at 1205 (quoting *Doe 1 v. AOL LLC*, 552 F.3d

22   1077, 1081 (9th Cir. 2009) (per curiam), *Klamath Water Users Protective Ass'n v. Patterson*, 204

23   F.3d 1206, 1210 (9th Cir. 1999), and *Hunt Wesson Foods, Inc. v. Supreme Oil Co.*, 817 F.2d 75, 77

24   (9th Cir. 1987)).

25            The plain meaning of the phrase "relating to" demonstrates the parties' intention to include

26   the broadest set of potential claims and disputes.  *See, e.g., Newman v. Lifeline Sys., Co.*, No. CIV 08-

27   583-TUC-CKJ (DTF), 2009 WL 1993345, at *8 (D. Ariz. July 7, 2009) (concluding that forum

28   selection clause that "cover[ed] any actions 'relating to' to the Agreement" is broad and governed the

plaintiff's negligence claim); *see also Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 406 (1967) (referring to arbitration clause that contained "arising out of or relating to" language as broad); *Tradecomet.com LLC v. Google, Inc.*, No. 10-911-CV, 435 Fed. Appx. 31, 35 (2d Cir. July 26, 2011) (applying forum selection clause that stated it applied to claims "arising out of or relating to this agreement or the Google Program(s)" to plaintiff's antitrust claims, even though they arose before acceptance of the agreement containing the forum selection clause, because they "relat[ed] to" the Google program(s)); *Parts Geek, LLC v. U.S. Auto Parts Network, Inc.*, No. CIVA 09-5578 (MLC), 2010 WL 1381005, at*6 (D.N.J. Apr. 1, 2010) (enforcing same forum selection clause as *Tradecomet.com*, concluding that plaintiff's numerous unfair business practices, negligence, and trademark infringement claims were governed by clause because they "relat[ed] to" the Google program(s)).

Moreover, "[t]he term 'related to' is 'not necessarily tied to the concept of a causal connection.'" *Prod. Res. Grp., LLC v. Martin Prof., A/S*, 907 F. Supp. 2d 401, 414 (S.D.N.Y. 2012) (quoting *Coregis Ins. Co. v. Am. Health Found., Inc.*, 241 F.3d 123, 128 (2d Cir. 2001)). Rather, the term "related to" is "equivalent to the phrases 'in connection with' and 'associated with,' and synonymous with the phrases 'with respect to' and 'with reference to.'" *Id.* (quoting *Boehringer Ingelheim Vetmedica, Inc. v. Merial, Ltd.*, No. 09-cv-212, 2010 WL 174078, at *11 (D. Conn. Jan. 14, 2010)). In other words, Courts have recognized that even if a plaintiff does not base a patent infringement action on the contract that contains the forum selection clause, the infringement claims may nonetheless "relate to" the subject matter of the agreements or otherwise be within the scope of the forum selection clause, and the clause therefore governs the infringement action. *See, e.g.*, *Prod. Res. Grp.*, 907 F. Supp. 2d at 414-15 ("While it may be that Plaintiff does not base its patent claims on the Agreements, that is, they do not arise from the Agreements, there is little doubt that the patent claims relate to the very agreements that governed Defendants' use of Plaintiff's patents.").

Unwired Planet's forum selection clause broadly applies to "any claim" that "relat[es] to" the Materials, and the Materials include "all information, documents, communications, files, text, graphics, software, and products included on [Unwired's] Site." Accordingly, the question here is not whether the claim relates to the Website's Terms and Conditions but rather whether the claim

relates to the Materials.  And indeed, Unwired Planet's patent infringement claim "relat[es] to" the "Materials" in numerous ways.  As discussed above, Unwired Planet's website and the materials found thereon are devoted to its efforts to make money from its patents, expressly including enforcement actions such as this one.  Angelis Decl. ¶¶ 3-6, 8, Exs. A-B, D-E, G.  The website identifies Unwired Planet's patents (including the Asserted Patents), outlines the strategy for enforcement, and specifically refers to and provides regular updates regarding litigation, including this case.  *Id.*  Thus, this action indisputably relates to the information, documents, and files contained on Unwired Planet's website (*i.e.*, the "Materials").

Moreover, the website Materials were used and downloaded by Square specifically in an attempt to understand Unwired Planet's assertions of infringement and its licensing strategy.  For example, upon receipt of the demand email in August 2013, Square went to Unwired Planet's website to obtain the documents referenced (but not included in the email) and to gain information about Unwired Planet's strategy.  *See* Pushparaj Decl. ¶¶ 3-5.  Square viewed and downloaded that information, and other information, as part of its investigation of Unwired Planet's potential claims. *Id.*  Square further used the Materials to attempt to fill in the gaps created by Unwired Planet's vague and incomplete communications, such as the August 20 email.  Pushparaj Decl. ¶¶ 3-10.

### 4. Unwired Planet Cannot Avoid Its Own Forum Selection Clause Because It Cannot Show that the Public-interest Factors Overwhelmingly Disfavor a Transfer

In light of Unwired Planet's forum selection clause, *Atlantic Marine* requires this Court to enforce it unless Unwired Planet demonstrates that the "public-interest factors" "*overwhelmingly disfavor* a transfer."  No. 12-929, 2013 WL 6231157, at *11, *13 (U.S. Dec. 3, 2013) (emphasis added) (valid forum selection clause "given controlling weight in all but the most exceptional cases") (quoting *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 33 (1988) (Kennedy, J., concurring).  Here, the relevant public-interest factors are court congestion and the local interest in resolving disputes.  As discussed below, these factors support transfer, and thus Unwired Planet cannot possibly meet its burden.

#### a. Court Congestion in the Two Forums Favors Transfer

The courts of this District are more congested than those of the Northern District of California.  In March 2012, the Administrative Office of the U.S. Courts declared two vacancies on

12

the federal bench in Nevada as "judicial emergencies."  Angelis Decl. Ex. T.  The vacancies were described as "the most troubling federal court crisis they've seen in Nevada in decades."  *Id.* Ex. S. One of these vacancies still remains today.  *Id.* ¶ 15.

Recent Federal Judicial Caseload Statistics likewise reflect the relative congestion of this District as compared to the Northern District of California.  For the twelve-month period ending March 31, 2013, the median time from filing to disposition through trial is 37.8 months in the District of Nevada and only 27.5 months in the Northern District of California.  Angelis Decl. Ex. U.  For that same period, the median time from filing to disposition for all cases was 8.8 months in the District of Nevada and 6.4 months in the Northern District of California.  *Id.*  Thus, statistical evidence supports the anecdotal evidence that the Northern District of California is less congested and therefore the favored forum for this case.

### b. The Local Interest in Resolving Disputes Favors Transfer

In patent litigation cases, courts typically look to the "center of activity"[6] to determine which district has a local interest in resolving the dispute.  *See Sandvik Intellectual Prop. AB v. Kennametal Inc.*, No. 1:09CV163, 2010 WL 1924504, at *6 (W.D.N.C. May 12, 2010); *see also Opius Techs., Ltd. v. Sears Holding Corp.*, No. 11-cv-8539, 2012 WL 2280696, at *7 (N.D. Ill. June 15, 2012) (granting motion to transfer to Central District of California based, in part, on conclusion that the District had a localized interest in the controversy given the defendants were headquartered in the District).  Here, the defendant (Square) is headquartered in the Northern District of California and the accused activity concerns products Square allegedly makes, uses, and distributes in and from the Northern District of California.  Stratton Decl. ¶¶ 3-6.  The Northern District of California has an interest in having localized controversies involving businesses located in the District, patents

---

[6] The "center of the accused activity is the district in which the defendant is alleged to have developed, tested, researched, produced, marketed, and made sales decisions concerning the accused product."  *Kannar v. Alticor, Inc.*, No. 08-5505, 2009 WL 975426, at *4 (N.D. Cal. Apr. 9, 2009) (internal quotations omitted); *see also BlazeFrame Indus. Ltd. v. Cal. Expanded Metal Prods. Co.*, No. C12-1922-RAJ, 2013 WL 2458754, at *1 (W.D. Wash. June 6, 2013) ("[I]n patent infringement cases, the preferred forum is that which is the center of gravity of the accused activity. . . .  The district court ought to be as close as possible to the milieu of the infringing device and the hub of activity centered around its production." (citing *Amazon.com, Inc. v. Cendant Corp.*, 404 F. Supp. 2d 1256, 1260 (W.D. Wash. 2005) and *In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed.Cir.2009)).

prosecuted in the District, and witnesses residing in the District, decided at home.  In contrast, Unwired Planet only recently relocated to Nevada from the Northern District of California, and the development of its Asserted Patents took place in that District, the home of its predecessor Openwave.  *Id.*; Angelis ¶ 12, Decl. Ex. N.  Thus, this factor also favors transfer to California, where the center of activity took place.

In sum, Unwired Planet cannot demonstrate that the public-interest factors "overwhelming disfavor transfer," as both of the traditional factors actually favor transfer, and the Court should therefore enforce the parties' forum selection clause.

### C. Motion to Transfer Based on Traditional "Convenience of the Parties and Witnesses" and the "Interests of Justice" Factors

Even if Unwired Planet's forum selection clause were inapplicable, which it definitively is not, transfer of this action would still be proper under the traditional § 1404(a) analysis.

### 1. Judicial Standard

Whether to grant a traditional motion to transfer pursuant to § 1404(a) is committed to the sound discretion of the Court, which should be exercised on an "individualized, case-by-case consideration of convenience and fairness."  *Stewart Org. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)).  After first determining whether the action "might have been brought" in the transferee district, *see* 28 U.S.C. § 1404; *Hoffman v. Blaski*, 363 U.S. 335. 343-44 (1960), courts in the Ninth Circuit consider and balance several private-interest factors including (1) "the contacts relating to the plaintiff's cause of action in the chosen forum," (2) "the ease of access to sources of proof," (3) "the respective parties' contacts with the forum," (4) "the availability of compulsory process to compel attendance of unwilling non-party witnesses," (5) "the location where the relevant agreements were negotiated and executed," (6) "the differences in the costs of litigation in the two forums," (7) "the state that is most familiar with the governing law," (8) "the plaintiff's choice of forum," and (9) convenience of party witnesses.[7]  *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498-99 (9th Cir. 2000); *Rikos v. Procter & Gamble Co.*, No.

---

[7] Square is not aware of any related claims, other than the Apple and Google matters discussed in the Motion, so the related claims factor is neutral.

14

10cv1974 BEN (CAB), 2011 WL 1456096, at*2 (S.D. Cal. April 13, 2011) (convenience of party witnesses).  Courts also consider the public-interest factors discussed above, namely court congestion and the local interest in resolving localized controversies in the forum.  *See Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986).

**2.  This Action "Might Have Been Brought" in the Northern District of California**

As explained above, there is no question that this action "might have been brought" in the Northern District of California.  *See supra* p. 9.

**3.  The Private-Interest Factors Weigh In Favor of Transferring this Case to the Northern District of California**

**a.  *The Lack of Contacts Relating to the Plaintiff's Cause of Action in the Chosen Forum Favors Transfer***

As a non-practicing entity suing on recently acquired patents, Unwired Planet's claims have little, if any, connection to the District of Nevada, and the analysis of contacts to the current forum therefore supports transfer.  *See Ventress v. Japan Airlines*, 486 F.3d 1111, 1118 (9th Cir. 2007) (granting motion to transfer where there was no significant connection between the forum "and the facts alleged in the complaint"); *Bluestone Innovations, LLC v. LG Elecs., Inc.*, 940 F. Supp. 2d 310, 315 (E.D. Va. 2013) (concluding that patent infringement action lacked nexus with district given it was brought by a non-practicing entity that did not manufacture or sell patent-based products and recently acquired patent).

Moreover, Unwired Planet's infringement allegations focus on Square's technology and business operations that are centered in, and firmly connected to, the Northern District of California. Stratton Decl. ¶¶ 3-8.  The accused Square technology was designed, developed, marketed, and supported in the Northern District of California.  *Id.* ¶¶ 5-6.  Unwired Planet sent multiple letters and emails to Square's offices in San Francisco.  Pushparaj Decl. Exs. A, B, D.  The only pre-suit face-to-face meeting between the parties occurred at the offices of Unwired Planet's counsel in Palo Alto, California, at Unwired Planet's suggestion.  *Id.* ¶ 8.  The attorneys who prosecuted the Asserted Patents are located in the Northern District of California, and none of the named inventors is located in Nevada.  Goodrich Decl. ¶¶ 5-17, 19-20; Angelis Decl. ¶¶ 20-22.  Thus, none of the matters relevant to validity or infringement of the Asserted Patents is connected to this District, and this factor favors transfer.

15

### b. *The Ease of Access to Sources of Proof in the Northern District of California Favors Transfer*

The location of and access to the sources of proof relevant to this case also strongly favor transfer because the bulk of the relevant documents are located in the Northern District of California, where Square has its corporate headquarters. *See Ward v. Fluor Enters., Inc.*, No. 10-cv-04361-SBA, 2011 WL 778720, at *4 (N.D. Cal. Mar. 1, 2011) (concluding that the location of documents at corporate headquarters in transferee forum weighs in favor of transfer); *De Los Santos v. Panda Exp., Inc.*, No. C 10-1370, 2011 WL 2560213, at *3 (N.D. Cal. June 28, 2011) (same); *Skyriver Tech. Solutions, LLC v. OCLC Online Computer Library Ctr., Inc.*, No. 10-cv-03305-JSW, 2010 WL 4366127, at *5 (N.D. Cal. Oct. 28, 2010) (same). Indeed, "[i]n patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location." *In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009) (quoting *Neil Bros. Ltd. v. World Wide Lines, Inc.*, 425 F. Supp. 2d 325, 330 (E.D.N.Y. 2006)); *see also Pragmatus AV, LLC v. Facebook, Inc.*, 769 F. Supp. 2d 991, 995 (E.D. Va. 2011) (concluding that the Northern District of California "would be far more convenient for the parties and their employees" because the defendant was headquartered in that district "and most of their sources of proof, including witnesses and documents, are in that district"). Courts have recognized that the location of documents in the transferee court, at a party's corporate headquarters, favors transfer. *See Fluor Enters.*, 2011 WL 778720, at *4 (concluding that the location of documents at corporate headquarters in transferee forum weighs in favor of transfer).

Square's evidence regarding this action is at its corporate headquarters in the Northern District of California. Stratton Decl. ¶¶ 3-8; Ishaq Decl. ¶¶ 2-5.[8] Moreover, an important source of proof in this case is Square's source code, which will only be made available in San Francisco. Pushparaj Decl. ¶ 12.

---

[8] Much of the evidence is stored electronically, but such storage "does not render this factor superfluous." *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 316 (5th Cir. 2008); *Sarandi v. Breu*, No. C 08-2118 SBA, 2009 WL 2871049, at *7 (N.D. Cal. Sept. 2, 2009) ("While technological advances may make documents more portable, their physical location remains a pertinent consideration.").

Even potentially relevant documents possessed by third parties are largely located in the Northern District of California.  For example, documents regarding the development, implementation, and operation of the mobile devices and mobile device operating systems that Unwired Planet includes within the "Accused Products and Services," Dkt. 1 at 6 ¶ 19, are located at the corporate headquarters of Apple and Google, in the Northern District of California.  Angelis Decl. ¶¶ 9, 11, Ex. H-K.  Transferring this action to the Northern District of California will facilitate ease of access to sources of proof, and this factor therefore favors transfer.

### c.   The Parties' Lack of Contacts with the District Favors Transfer

The parties lack significant contacts with this District.  Square lacks *any* significant contacts here, with its headquarters in San Francisco, California, and with no offices or employees with any information relevant to this dispute in the District of Nevada.  Stratton Decl. ¶¶ 3, 5-6; Ishaq Decl. ¶¶ 2-4, 7-8.  Moreover, none of Square's products or services at issue was developed in this District, as such activity occurred instead in the Northern District of California.  Stratton Decl. ¶ 5; *see also Kannar v. Alticor, Inc.*, No. 08-5505, 2009 WL 975426 at *4 (N.D. Cal. Apr. 9, 2009) ("[T]he center of the accused activity is the district in which the defendant is alleged to have developed, tested, researched, produced, marketed, and made sales decisions concerning the accused product.") (internal quotations omitted).  Once again, Square's lack of meaningful contacts with this District favors transfer.

To the extent Unwired Planet has any relevant contacts with this District, there were primarily developed *after* it lost a § 1404(a) motion that led to the transfer (to the Northern District of California) of the Apple Action on August 30, 2013.  Angelis Decl. ¶9, Ex. I.  In fact, Unwired Planet has admitted that its litigation interests motivated it to move to this District.  *Id.* Ex. D.  Courts (including this one)[9] have recognized that the formation of an entity in a particular district in order to litigate in that district does not justify refusing to transfer an action to a more convenient forum.  *See In re Microsoft Corp.*, 630 F.3d 1361, 1364-65 (Fed. Cir. 2011) (transferring action); *In re Zimmer*, 609 F.3d 1378, 1382 (Fed. Cir. 2009) (same); *Convervence Techs. (USA) v. Microloops Corp.*, 711 F.

---

[9] Since this Court's transfer of the patent infringement Apple Action pursuant to § 1404(a), Unwired Planet and Apple have been litigating in the Northern District of California.  *See id.* Ex. J.

17

Supp. 2d 626, 641-42 (E.D. Va. 2010) (same).  In granting the motion to transfer the Apple Action, this Court concluded that "it is clear beyond any doubt that Plaintiff was created solely for the purpose of filing the lawsuit, that the witnesses and evidence are located primarily, if not entirely, in California, in which state it will be more convenient for the parties to litigate, and that the only meaningful contact of the parties or the lawsuit with Nevada is Plaintiff's counsel.  In such cases, transfer is eminently appropriate."  Angelis Decl. Ex. I.  Although Unwired Planet attempted to hire employees and further establish presence in Reno shortly after receiving this decision, such pretextual and recently developed contacts cannot hold much weight, particularly with the bulk of the evidence and witnesses firmly established elsewhere.  Indeed, it is telling that, as discussed above, Unwired Planet's own forum selection clause remains pointed unambiguously at the venue in which it is still most present: the Northern District of California.

This explicit forum preference reflects the fact that Unwired Planet's parent company, Unwired Planet, Inc., and predecessor-company, Openwave, both operated in the Northern District of California for many years.  Angelis Decl. ¶ 12, Exs. L-M.  Courts have recognized that a parent corporation's connection to the transferee forum can outweigh a subsidiary company's selection of the transferor district.  *See Shared Memory Graphics LLC v. Apple, Inc.*, No. 5:09CV5128 BSM, 2010 WL 5151612, at *3-4 (W.D. Ark. May 27, 2010) (granting motion to transfer even though plaintiff was incorporated in the transferor district).  Indeed, Openwave's spinoff companies, Openwave Mobile and Openwave Messaging, continue to operate as separate companies in Northern California.  *Id.*, Exs. O-P.

Given the minimal contacts either party has to this District, the third private-interest factor favors transfer as well.

### d.  *The Lack of the Availability of Compulsory Process to Compel Attendance of Unwilling Non-Party Witnesses in this District Favors Transfer*

This factor strongly favors transfer because there are numerous third party witnesses who likely will provide important testimony regarding validity, infringement, and damages who are not subject to compulsory process in this District and are unwilling or unable to travel to this District for trial on behalf of Square.  Many of those witnesses are subject to compulsory process in the Northern District of California.

18

i.       *Evidence Regarding the Hypothetical Negotiation and Damages*

Because Unwired Planet is a non-practicing entity, the only damages it can obtain are reasonable royalties.  *Cf.* 35 U.S.C. § 284; *Panduit Corp. v. Stahlin Bros. Fibre Works, Inc.*, 575 F.2d 1152, 1156 (6th Cir. 1978) (recognizing that determination of lost profits requires showing as to "manufacturing and marketing capability to exploit the demand").  To determine a reasonable royalty, the parties' respective experts traditionally rely on a "hypothetical negotiation," in which each assumes the Asserted Patents are valid and infringed and considers the terms of a hypothetical license agreement between Square and Unwired Planet as if each knew all of the facts and circumstances of both parties.  *See Georgia-Pac. Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120-22 (S.D.N.Y. 1970).  Unwired Planet likely will assert—but Square certainly does not concede—that the date of the hypothetical negotiation likely would have been in 2010 or 2011 for the '100 Patent and '433 Patent and in September 2012 (the date of issue) for the '359 Patent.  *See LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 76 (Fed. Cir. 2012).  Thus, for the '100 and '433 patents, the hypothetical negotiation would have been between Openwave and Square, and the analysis will depend critically on the situation at Openwave as of the date of the negotiation.  Accordingly, evidence regarding Openwave's business and activities in relation to the alleged inventions of the '100 and '433 patents will be paramount, and such evidence will include:  (1) its business condition, (2) use of the claimed invention, (3) prior and contemporaneous licensing practices and strategies; and (4) its prior licenses regarding this, and other, technology.  *See Georgia Pac.*, 318 F. Supp. at 1120.  Most, if not all, of Openwave's employees with knowledge of those facts appear to reside within the Northern District of California, and they appear unwilling to commit to travel to this District for trial at Square's request.  Indeed, Square has contacted the following former Openwave employees who appear to have knowledge that will be critical to the hypothetical negotiation and who, given that they reside in the Northern District of California, *are* subject to compulsory process in that District, not this District:

• Martin McKendry was the Senior Vice President of Engineering at Openwave from 2008 to 2011 and now lives in San Carlos, California.  McKendry supervised 300 engineers in California, Denver, Boston, Ireland, and India, and he had responsibility for, for example, instructing

19

engineers about the $1,000 bounty Openwave paid for inventions that became patents. McKendry likely has knowledge regarding the development of the technology contained in the Asserted Patents, product management, procedures and practices regarding product development, product standards and strategies, the prosecution of the Asserted Patents, and related issues. Square's counsel contacted McKendry, who stated that he would *not* commit to traveling to this District to testify at trial in this action at Square's request. McKendry said that he "can't see why [he] would." He also stated that when he worked for Openwave, it had no presence in Nevada, and that all of Openwave's operations were in Redwood City, California. Angelis Decl. ¶ 23.

- Karen Willem was the Chief Financial Officer of Openwave from 2008 to 2010 and works in the San Francisco Bay Area. Willem will likely have knowledge that is relevant to the inquiry on the hypothetical negotiation, including licensing at that time, valuations, and related matters. Willem also likely has knowledge regarding the prosecution, and assignment, of the Asserted Patents, business operations at Openwave that led to the transfer of the Asserted Patents to Unwired Planet, damages, and related issues. Square's counsel spoke with Willem; she explained she was not willing to travel voluntarily to the District of Nevada to testify at trial in this matter on Square's behalf and stated: "I'm not going to commit to go to Reno." *Id.* ¶ 24.

- Bruce Posey was General Counsel at Openwave from 2009 to 2010 and currently works at Qualys in San Mateo, California. Posey explained that he supervised the work of David Cordeiro, who managed patent prosecution and licensing during the time Posey served as General Counsel at Openwave. Accordingly, Posey may have knowledge of the prosecution of the Asserted Patents, licensing of the Asserted Patents, and related issues. Posey is not willing to commit to travel voluntarily to the District of Nevada to testify at trial in this matter on Square's behalf. As he said, "If I had a choice, I would love not to have to go to Reno." *Id.* ¶ 25.

- David Cordeiro was the Chief IP Counsel at Openwave from 2009 to 2011, appears to reside in the San Francisco Bay Area, and works in San Ramon, California. Codeiro's LinkedIn page states that he "architecte[ed] strategic litigation cases" for Openwave and that those cases were brought in the Northern District of California or before the International Trade Commission. Cordeiro signed a statement of assignee and power of attorney on behalf of Openwave during the

20

prosecution of the '100 Patent, shortly before the issuance of the '100 Patent, on or about April 13, 2010 and likely has knowledge regarding the prosecution of the '100 Patent, licensing of the Asserted Patents, and related issues. *Id.* According to Posey, Cordeiro managed the patent prosecution and licensing process at Openwave. Counsel for Square attempted to contact Cordeiro on several occasions by telephone and email, but he has not responded. Counsel for Unwired Planet then contacted Square's counsel to request that they refrain from contacting Mr. Cordeiro, who they informed for the first time that they represent in this action. *Id.* ¶ 26.

- Jerry Held was a member of Openwave's board of directors from May 2005 to November 2012 and appears to reside in the San Francisco Bay Area. Held likely has knowledge regarding Openwave's business practices, management, acquisition of the Asserted Patents, assignment of patent portfolio (including the Asserted Patents) to Unwired Planet, licensing, damages (including the determination of a reasonable royalty), and related issues. Counsel for Square contacted Held on several occasions, but he has not responded. Thus, it appears unlikely that Held will commit to traveling voluntarily to the District of Nevada to testify at trial in this matter on Square's behalf. *Id.* ¶ 30.

- Henry R. "Hank" Nothhaft was a member of Openwave's board of directors from 2011 to 2013, appears to reside in the San Francisco Bay Area, and has extensive knowledge of patent licensing issues. Nothhaft likely has knowledge regarding Openwave's business practices, management, assignment of patent portfolio (including the Asserted Patents) to Unwired Planet, licensing, damages (including the determination of a reasonable royalty), and related issues. Counsel for Square contacted Nothhaft, and he confirmed he is unwilling to travel voluntarily to the District of Nevada to testify at trial on Square's behalf. *Id.* ¶ 29.

    ii.    ***Evidence Regarding Conception, Reduction to Practice, and the Scope of the Inventions Within the Asserted Claims***

During prosecution of two of the three Asserted Patents, while seeking to overcome prior art, Openwave told the U.S. Patent and Trademark Office that its invention occurred prior to the filing date. Angelis Decl. ¶ 22, Ex. V. Square anticipates presenting evidence that will undercut that assertion. *Id.* Openwave also characterized the prior art in ways that substantially undermine Unwired Planet's infringement claims against Square. Accordingly, at trial, Square will likely

21

present evidence gathered from contemporaneous documents and the individuals involved in prosecuting the patents.  Those individuals include Openwave employees who were involved in prosecuting and licensing patents and the lawyers involved in prosecuting the patents.  To date, Square has identified the following such witnesses, all of whom appear to live and work in the Northern District of California, and given that they appear to reside in the Northern District of California, *are* subject to compulsory process in that District, not this District:

- Greg Wrenn was the Senior Vice President General Counsel at Openwave from 2004 to 2006 and now works in the San Francisco Bay Area for Support.com.  Wrenn signed a statement of assignee and power of attorney on behalf of Openwave during the prosecution of the '100 Patent that was filed with the USPTO shortly after the filing of the application for that patent, on or about October 12, 2006, and likely has knowledge of the prosecution of the patent and related issues.  Wrenn supervised general technology licensing as part of deals Openwave entered into with parties in the telecommunications space.  Wrenn also supervised the work of Alan Minsk, who manage patent prosecution and licensing during the time Wrenn served as General Counsel. Counsel for Square contacted Wrenn, who stated that he would *not* commit to traveling to the District of Nevada to testify at trial in this action at Square's request.  Wrenn said that he "would prefer" to be deposed in the Bay Area, and that Reno was not as convenient as other places for his deposition or trial testimony.  Angelis Decl. ¶ 27.

- Jon McCormack was the Senior Vice President of Engineering at Openwave from 2004 to 2006 and appears to reside in the San Francisco Bay Area.  McCormack likely has knowledge regarding the development of the technology contained in the Asserted Patents, product management, procedures and practices regarding product development, product standards and strategies, the prosecution of the Asserted Patents, and related issues.  It is likely that McCormack will prefer to remain in his home state of California if asked to testify at trial in this matter on Square's behalf.

- Mohan Sadashiva was the Chief Product Strategist at Openwave from 1999 to 2004 and appears to reside in the San Francisco Bay Area.  Sadashiva likely has knowledge regarding development of the technology contained in the Asserted Patents, product management, procedures and

practices regarding product development, product standards and strategies, licensing, damages, and related issues.  Counsel for Square attempted to contact Sadashiva on several occasions, but he has not responded.  It therefore appears unlikely that Sadashiva will commit to traveling voluntarily to the District of Nevada to testify at trial in this matter on Square's behalf.  *Id.* ¶ 31.

- Jeffrey Kang Chieh Li was the General Counsel of Openwave from 2005 to 2008 and appears to reside in the San Francisco Bay Area.  Li signed a power of attorney that was filed with the USPTO on May 19, 2008 regarding the '100 Patent and likely has knowledge of the prosecution of the '100 Patent and related issues.  Counsel for Square contacted Li on several occasions and Li responded to Square's counsel on December 20, 2013.  Although Li indicated that a one-day trip to Reno would not be "that big a deal for [him]," Li did not commit to traveling voluntarily to this District to testify at trial in this matter at Square's request.  *Id.* ¶ 28.

- Alan Black was the Chief Financial Officer at Openwave from 1997 to 2003 and appears to reside in the San Francisco Bay Area.  Black likely has knowledge regarding how Openwave prosecuted patents at the time the patent applications were filed to which Unwired Planet claims priority.  With respect to the '433 Patent, Unwired Planet claims priority to July 1998, and with respect to the '100 Patent, it claims priority to November 24, 1997.  Black also likely has knowledge regarding the initial acquisition of rights to the technology that became the Asserted Patents, any valuation thereof, historical licensing that bears on damages (including a reasonable royalty), and related issues.  Counsel for Square attempted to contact Black on several occasions, but he has not responded.  Thus, it appears unlikely that Black will commit to traveling voluntarily to the District of Nevada to testify at trial in this matter on Square's behalf.[10]  *Id.* ¶ 32.

Further, the location of the prosecuting attorneys favors a transfer.  *See Restoration Industry Ass'n Inc. v. Thermapure, Inc.*, No. C13-122 TSZ, 2013 WL 1016828, at *2  (W.D. Wash. March 14, 2013) (granting motion to transfer because the defendants were located in the transferee forum and

---

[10] Sean MacNeil was the Vice President of Global Services and Support at Openwave and appears to reside in the Los Angeles area.  *Id.* ¶ 33.  Mr. MacNeil signed a statement of assignee, which was filed with the USPTO regarding the '100 Patent.  *Id.*  Alan Minsk was Director and Patent Counsel at Openwave from 1999 to 2006, was involved in the prosecuted the '100 Patent and '433 Patent, and it appears that Mr. Minsk is currently located in the Seattle, Washington area.  *Id.*

"[a]ll documents related to the prosecution of the six patents, as well as the attorneys who prosecuted the patents-in-suit[] are also located in th[at] [] District."). Here, most of the attorneys who prosecuted the Asserted Patents are located in the Northern District of California and, thus, *are* subject to compulsory process in that District, not this District:

- The '433 Patent was prosecuted by Craig C. Largent and Melvin D. Chan at Townsend and Townsend and Crew LLP's San Francisco, California offices. Largent appears to reside in the San Francisco Bay Area and works at Kilpatrick Townsend's offices in Menlo Park, California. Counsel for Square attempted to contacted Largent to determine whether he would commit to traveling to the District of Nevada to testify at trial at Square's request. Largent responded to Square's counsel on December 20, 2013 indicating he would call Square's counsel, but has not yet done so. Chan also appears to reside in the San Francisco Bay Area and works in Santa Clara, California. Counsel for Square contacted Chan, who stated that he did not yet have a view on whether he would voluntarily travel to the District of Nevada to testify at trial. Mark Sockol at Shepard Mullin Richter & Hampton LLP's Palo Alto, California offices was involved in post-issuance communications with the USPTO regarding the '433 Patent and appears to be located in the San Francisco Bay Area. Because Shepard Mullin appears to currently represent Unwired Planet and because on September 19, 2013 Unwired Planet's counsel in this action asked Square's counsel to refrain from contacting even *former* counsel for Openwave, Square's counsel did not attempt to contact Sockol. Compl. Ex. B; Goodrich Decl. ¶¶ 5-11.

- The '100 Patent was prosecuted by Hal R. Yeager at Townsend and Townsend and Crew LLP's San Francisco, California offices.[11] Yeager appears to be retired and to reside in the San Francisco-Bay area. Counsel for Square was unable to obtain a current telephone number for Mr. Yeager. The '100 Patent was also prosecuted by Thomas J. Ham and Mark. A. Wilson at Wilson Ham & Holman in Pleasanton, California. Ham and Wilson appear to reside in the San Francisco-Bay area. Counsel for Square attempted to contact Ham and Wilson to determine

---

[11] The '100 Patent was also prosecuted by Robert J. Crawford of Crawford Maunu PLLC in St. Paul, Minnesota and appears to be located in the St. Paul area. *Id.* ¶ 18.

whether they would commit to traveling to this District to testify at trial at Square's request, but they have not responded. Thus, it appears unlikely that Ham or Wilson will commit to traveling voluntarily to this District to testify at trial in this matter on Square's behalf. *Id.* ¶¶ 12-17.

- The '359 Patent was prosecuted by Yalei Sun and Douglas James Crisman at Morgan, Lewis & Bockius LLP's Palo Alto, California office. Sun and Crisman appear to reside in the San Francisco Bay Area and work in Morgan Lewis's Palo Alto offices. Sun and Crisman are at the firm that currently represents Unwired Planet in this action. *Id.* ¶¶ 19-20; Compl. Ex. C.

### iii. Evidence Regarding the Hardware and Operating Systems on which the Accused Products Run

The three Asserted Patents all involve the geolocation technology used by mobile devices such as smartphones. Square does not make or sell such mobile devices, but instead offers applications for Apple's iPhone (and related devices) that use the iOS operating system and on non-Apple mobile devices that use Google's Android Operating system. Accordingly, Unwired Planet's infringement and non-infringement allegations and Square's defenses will depend upon evidence obtained from Apple, Google, and other mobile phone manufacturers. In light of declarations filed in support of motions to transfer by Apple and Google (both of which are headquartered in the Northern District of California) in actions brought against them by Unwired Planet in this District, Apple and Google likely will not voluntarily send their employees to this District to testify at trial in this action at all, let alone on Square's behalf. Angelis Decl. Ex. H, K. Indeed, the Court previously transferred the Apple Action, in which Unwired Planet asserted patent infringement claims, to the Northern District of California based in large part on the greater convenience to Apple and the location of its evidence in that forum. *Id.* Ex. I. Google, likewise has been sued by Unwired Planet and continues to attempt to obtain transfer of the claims against it to the Northern District of California. *Id.* ¶ 11.

In sum, the significant number of third parties witnesses who are not subject to compulsory process in this District tilts this factor heavily in favor of transfer.

### e. The Differences in the Costs of Litigation in the Two Forums Favor Transfer

The cost differential factor favors transfer because the costs of litigation in this District are greater than in the Northern District of California, where Square is headquartered. "Generally, litigation costs are reduced when venue is located near most of the witnesses expected to testify or

25

give depositions." *Italian Colors Rest. v. Am. Express Co.*, No. 03-3719 SI, 2003 WL 22682482, at *5 (N.D. Cal. Nov. 10, 2003); *Stewart v. Jos. A. Bank Clothiers, Inc.*, No. C 09-5348 PJH, 2010 WL 545846, at *3 (N.D. Cal. Feb. 11, 2010) (ordering transfer to venue in which defendant has its headquarters in part because defendant "will have to pay its employees' transportation and accommodation expenses while they are testifying at trial"); *Patent Mgmt. Found., LLC v. Analog Devices, Inc.*, No. C 10-03630-SBA, 2011 WL 197831, at *14 (N.D. Cal. Jan. 20, 2011) ("[T]he cost of litigation will likely be less if the case were venued in the forum where the evidence is located.").

As detailed above, the clear majority of witnesses (party and nonparty) expected to testify at trial and the documents that will become trial exhibits are located in the Northern District of California.  Square's headquarters are in the Northern District of California.  Stratton Decl. ¶ 3.  All of Square's documents and related evidence are located in the Northern District of California, as are the majority of its witnesses.  *Id.* ¶¶ 5-8; Ishaq Decl. ¶¶ 2-6.  The cost for Square to bring its employees and all of its evidence to Nevada, which will constitute the bulk of the evidence in this action, would be substantial.  Stratton Decl. ¶¶ 5-8; Ishaq Decl. ¶¶ 2-6.  Correspondingly, all of the former Openwave witnesses and other third party witnesses listed above reside in the Northern District of California.  Angelis Decl. ¶¶ 9, 11-12, 23-32; Goodrich Decl. ¶¶ 5-17, 19-20.  That District is clearly the most cost effective forum, and the costs-of-litigation thus factor favors transfer.

### f.   The State that is Most Familiar with the Governing Law is a Neutral Factor

California and Nevada are equally familiar with the governing law.

### g.   The Plaintiff's Choice of Forum is Entitled to Little Weight

As an entity that does not manufacture any good or market any services, and exists solely to license patents, Unwired Planet's choice of this District is entitled to diminished weight.  *See Knapp v. Wachovia Corp.*, No. C 07-4551 SI, 2008 WL 2037611, at *2 (N.D. Cal. May 12, 2008).  Courts routinely give minimal deference to the plaintiff's choice of forum where, as here, the plaintiff is a non-practicing entity.  *See Bluestone Innovations, LLC v. LG Electronics, Inc.*, 940 F. Supp. 2d 310, 315 (E.D. Va. 2013) (affording non-practicing entity's choice of forum diminished weight); *Pragmatus AV, LLC v. Facebook, Inc.*, 769 F. Supp. 2d 991, 995 (E.D. Va. 2011) (giving "minimal weight" to the plaintiff's choice of forum given "the weak connection between the [non-practicing entity] plaintiff and the Eastern District of Virginia"); *Adiscov, LLC. v. Autonomy Corp., PLC*, No.

26

2:11-cv-00201-RBS-DEM, 2011 WL 11536971, at *3 (E.D. Va. June 9, 2011) ("Adiscov is a non-practicing entity, formed only for the purpose of protecting the intellectual property rights of the '760 patent" and concluding that, based on this and the limited connection with the forum, "the plaintiff's choice of forum does not warrant a strong presumption and instead counsels that transfer may well be proper."); *cf. Broad. Data Retrieval Corp. v. Sirius Satellite Radio, Inc.*, No. CV 06-1190JFWSSX, 2006 WL 1582091, at *3 (C.D. Cal. June 6, 2006) ("Plaintiffs' choice of forum is entitled to minimal deference, especially in light of BDRC's efforts to forum shop.").

Moreover, where, as here, the plaintiff's connection to the forum is of recent vintage, courts give such connection virtually no weight when considering a motion to transfer. *Cheah IP, LLC v. Plaxo, Inc.*, No. 2:08-cv-05036-SJO-PLA, 2008 U.S. Dist. LEXIS 108730, *11 (C.D. Cal. Oct. 17, 2008) ("Because Cheah was formed merely two weeks prior to filing suit, its listed address is that of its counsel in this case, and it has shown no significant connection to the Central District, Cheah's choice of forum is entitled to minimal deference."). Here, Unwired Planet admits that its contacts with this forum were created after facing (and beginning to lose) transfer motions in its other patent monetization cases. Angelis Decl. Ex. D (quoting Unwired Planet's CEO, Mike Mulica: "[W]e are relocating to Nevada, a business-friendly, cost-effective and convenient location. Nevada has been chosen as one of 14 districts across the United States as a pilot patent district and it has developed specialized procedures to handle complex patent cases. As a result, we believe the Nevada district will be an ideal venue to resolve this matter with efficiency and expertise.").[12] This kind of manipulative conduct does not weigh in favor of retaining venue. *See In re Microsoft Corp.*, 630 F.3d 1361, 1364-65 (Fed. Cir. 2011) (affording no weight to party's principal place of business and location of its documents given party's recent move and incorporation in forum, which suggested forum manipulation); *In re Zimmer*, 587 F.3d 1378, 1382 (Fed. Cir. 2009); *Convervence Tech. (USA) v. Microloops Corp.*, 711 F. Supp. 2d 626. 641-42 (E.D. Va. 2010) (recognizing that plaintiff's

---

[12] Unwired Planet's suggestion that it was motivated to move to this District due to its patent pilot program is disingenuous given that it was previously located in the Northern District of California, which also has a patent pilot program. *See* http://www.cand.uscourts.gov/news/63 (last visited Dec. 14, 2013).

choice of forum merits little weight where it was unclear the extent of the plaintiff's business activities in the forum and evidence relating to patent infringement claim located with parent company outside the forum); *Italian Colors Rest. v. Am. Express Co.*, No. C 03-3719 SI, 2003 WL 22682482, at *4 (N.D. Cal. Nov. 10, 2003) ("[T]he Ninth Circuit has established that courts should disregard a plaintiff's forum choice where the suit is a result of forum-shopping.").

Finally, in a patent case, courts give less deference to the plaintiff's choice of forum when the center of accused activity is outside the chosen forum. *See Sorensen v. Daimler Chrysler AG*, No. 02-4752, 2003 WL 1888866, at *3 (N.D. Cal. Apr. 11, 2003); *see also supra* p. 13, n.7 (discussing cases in which courts transferred patent infringement matters to the location of their "center of gravity"). This is particularly true where the bulk of the evidence is located in the transferee forum. *Cheah IP, LLC v. Plaxo, Inc.*, No. 2:08-cv-05036-SJO-PLA, 2008 U.S. Dist. LEXIS 108730, at *4 (C.D. Cal. Oct. 17, 2008) ("[W]here the plaintiff lacks significant ties to the forum because the operative facts giving rise to the litigation action occurred elsewhere, the plaintiff's choice of forum is given considerably less weight, even if the plaintiff is a resident of the forum."). As shown above, there is little, if any, connection between Unwired Planet's claims and this District, which further diminishes any remaining weight to be given to Unwired Planet's choice of forum. Thus, Unwired Planet's choice of forum is entitled to minimal or no weight.

### h. The Convenience of Party Witnesses Favors Transfer

The fact that most of the party witnesses are located outside this District is a convenience factor that the court may also consider, and which also favors transfer in this case. *Rikos v. Procter & Gamble Co.*, No. 10cv1974 BEN (CAB), 2011 WL 1456096, at *2 (S.D. Cal. April 13, 2011) ("While the convenience of party witnesses does not get as much weight as that of non-party witnesses, it is still a factor this Court may consider."); *Stewart v. Jos. A. Bank Clothiers, Inc.*, Case No. C 09-5348-PJH, 2010 WL 545846, at *3 (N.D. Cal. Feb. 11, 2010) (in granting transfer motion, court considered the fact that "business operations will suffer during the time its . . . employees are in the [transferor forum] testifying at trial and that it will have to pay its employees transportation and accommodation expenses while they are testifying at trial."). Again, Square's headquarters are in the Northern District of California. Stratton Decl. ¶ 3. The vast majority of Square's employees who will be witnesses in this action are located in the Northern District of California. *Id.* ¶¶ 5-6; Ishaq

Decl. ¶¶ 2-4.  Conversely, none of Square's employees who will be witnesses in this action is located in the District of Nevada.  Stratton Decl. ¶¶ 5-6; Ishaq Decl. ¶¶ 2-4.

Square intends to rely on the testimony of the following Square witnesses, all of whom reside in the Northern District of California: Nathan Spindel, Square Wallet Engineering; Matt Wilson, Square Wallet Engineering; Jim Puls, Square Wallet Engineering; Dustin Moring, Square Wallet Product team; Shawn Morel, Square Register and Servers; and Naeem Ishaq, Finance & Strategy. Stratton Decl. ¶ 6.  Similarly, it appears that the identified leadership of Unwired Plant still resides in, owns property in, or otherwise maintains strong ties to the Northern District of California.  Timothy M. Robbins is a General Manager of Intellectual Property and resides in Menlo Park, California. Angelis Decl. ¶ 14, Ex. R.  Daniel Mendez is the General Manager, Intellectual Property Division and appears to own property in the San Francisco Bay Area.  *Id.* ¶ 13, Ex. Q.  Michael C. Mulica is a member of Unwired Planet's board of directors and its former president and chief executive officer. *Id.* ¶ 13.  Mulica appears to reside in, own property in, and otherwise maintains strong ties to the San Francisco Bay Area.  *Id.*

Moreover, as discussed above, the Terms and Conditions on Unwired Planet's own website bind all third parties who access and use information, documents, and files (*i.e.* "Materials") available on its website to litigate in the Northern District of California.  To now argue that its chosen forum is inconvenient defies credulity and logic.  Thus, this factor favors transfer as well.

### 4.  The Public-Interest Factors Favor Transfer

#### a.  *Court Congestion in the Two Forums Favors Transfer*

As set forth in Section III.A. above, this factor favors transfer because the courts of this District are more congested than those of the Northern District of California.

#### b.  *The Local Interest in Resolving Disputes Favors Transfer*

As set forth in Section III.A. above, this factor favors transfer because Square is headquartered in, and the bulk of the evidence and witnesses are located in, the Northern District of California whereas Unwired Planet's claims are not tied to this District.

## IV.  CONCLUSION

In light of the foregoing, Square respectfully requests the Court grant its motion and transfer this action to the Northern District of California pursuant to 28 U.S.C. § 1404(a).

Dated:  December 20, 2013                    By:    /s W. West Allen
                                                    LEWIS ROCA ROTHGERBER LLP

                                                    W. WEST ALLEN
                                                    Nevada Bar No. 5566
                                                    wallen@lrrlaw.com
                                                    3993 Howard Hughes Parkway, Suite 600
                                                    Las Vegas, Nevada  89109

                                                    E. LEIF REID
                                                    Nevada Bar No. 5750
                                                    lreid@lrrlaw.com
                                                    LEWIS ROCA ROTHGERBER LLP
                                                    50 West Liberty Street
                                                    Suite 410
                                                    Reno, NV 89501-1922
                                                    Telephone: (775) 321-3415
                                                    Facsimile: (775) 823-2929

                                                    THEODORE J. ANGELIS
                                                    theo.angelis@klgates.com
                                                    DOUGLAS B. GREENSWAG
                                                    douglas.greenswag@klgates.com
                                                    K&L GATES LLP
                                                    925 4th Avenue, Suite 2900
                                                    Seattle, WA  98104
                                                    Telephone:  (206) 370-8101
                                                    Facsimile:  (206) 370-6006

                                                    *Attorneys for Defendant SQUARE, INC.*

30

1

## **CERTIFICATE OF SERVICE**

2       I hereby certify that on December 20, 2013, I electronically transmitted the attached

3  document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of

4  Electronic Filing on the CM/ECF registrants.

5

6                      _/s/ *Judy Estrada*
                      An Employee of Lewis Roca Rothgerber

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28