W. WEST ALLEN
Nevada Bar No. 5566
wallen@lrrlaw.com
LEWIS ROCA ROTHGERBER LLP
3993 Howard Hughes Parkway, Suite 600
Las Vegas, Nevada 89109
Telephone: (702) 949-8200
Facsimile: (702) 949-8398

E. LEIF REID
Nevada Bar No. 5750
lreid@lrrlaw.com
LEWIS ROCA ROTHGERBER LLP
50 West Liberty Street
Suite 410
Reno, NV 89501-1922
Telephone: (775) 321-3415
Facsimile: (775) 823-2929

THEODORE J. ANGELIS,
Admitted pro hac vice
theo.angelis@klgates.com
DOUGLAS B. GREENSWAG
Admitted pro hac vice
douglas.greenswag@klgates.com
K&L GATES LLP
925 4th Avenue, Suite 2900
Seattle, WA 98104
Telephone: (206) 370-8101
Facsimile: (206) 370-6006

*Attorneys for Defendant Square, Inc.*

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

RENO DIVISION

| | |
|---|---|
| UNWIRED PLANET LLC, a Nevada limited liability company<br><br>Plaintiff,<br><br>vs.<br><br>SQUARE, INC., a Delaware corporation<br><br>Defendant. | CASE NO. 3:13-CV-00579-RCJ-WGC<br><br>**DECLARATION OF KIRUPA PUSHPARAJ IN SUPPORT OF DEFENDANT SQUARE, INC.'S MOTION TO TRANSFER** |

1

I, Kirupa Pushparaj, declare as follows:

1. I am IP Counsel for Defendant Square, Inc. ("Square"). I work at Square's headquarters in San Francisco, California. I have been employed by Square since May 30, 2013. Unless otherwise stated, the matters contained in this declaration are of my own personal knowledge and, if called as a witness, I could and would testify to them.

2. Soon after I began working at Square, I received a copy of a letter from Daniel Mendez of Unwired Planet dated June 24, 2013 and addressed to Square's General Counsel, Dana Wagner. A true and correct copy of that letter (without exhibits) is attached hereto as Exhibit A.

3. On August 20, 2013, I received a forwarded copy of an email from Mr. Mendez <Daniel.mendez@unwiredplanet.com> to Dana Wagner. Mr. Mendez had attached to his email a PDF copy of the letter dated June 24, 2013, but he omitted the appendices sent with the letter. (Mr. Mendez did send a Microsoft Word version of one of the appendices—a proposed non-disclosure agreement—but he omitted the other appendices). A true and correct copy of the August 20, 2013 email from Mr. Mendez (without exhibits) is attached hereto as Exhibit B.

4. As mentioned, Mr. Mendez's August 20, 2013 email did not include the materials referenced in the attached letter, such as the list of Unwired Planet's approximately 2,400 patents and patent applications, the press release regarding Unwired Planet's litigation against Google and Apple, and other background materials. Accordingly, I visited Unwired Planet's website at <unwiredplanet.com> the same day I reviewed Mr. Mendez's email, and several times thereafter, to obtain the omitted documents. In addition, because the letter asserted that Unwired Planet had patents that allegedly were relevant to Square (but did not specify any particular product that infringed any identified Unwired Planet patent), I also sought to learn more during my visits to the website about Unwired Planet and its patents.

5. While on Unwired Planet's website, I accessed and downloaded the publicly-available list of Unwired Planet's approximately 2,400 patents and patent applications, which identified the same patents and patent applications included as an appendix to Mr. Mendez's June 24, 2013 letter. I also accessed and downloaded other information and files on Unwired Planet's website, including information regarding Unwired Planet's enforcement strategy and litigation it had brought.

6. After reviewing the materials on Unwired Planet's website, I remained unaware of which, if any, of the 2,400 patents on the publicly-available list I reviewed and downloaded from Unwired Planet's website allegedly applied to Square's technology. Accordingly, on August 28, 2013, I sent an email to Mr. Mendez in which I noted that Unwired Planet's "letter references a portfolio that spans over 50 pages and lists the titles of over 2400 patents and applications, without providing any specific indication of patents [Unwired Planet] think[s] may be relevant to Square." I further explained that it was not possible for Square to assess Unwired Planet's suggestion that certain of its patents were relevant to Square without further information from Unwired Planet about the specific patents claimed to be in issue. A true and correct copy of my email is attached hereto as Exhibit C.

7. On August 29, 2013, I received an email from Mr. Mendez in which he conditioned receipt of additional information on Square agreeing to execute a non-disclosure agreement. A true and correct copy of that email is attached hereto as Exhibit D.

8. On September 26, 2013, I met with Daniel J. Mendez, at his request, in Palo Alto, California. The meeting occurred at the offices of Unwired Planet's counsel, which is the location that Unwired Planet selected. I executed a non-disclosure agreement at the beginning of the meeting.

9. Both before and after the September 26, 2013 meeting in Palo Alto, I visited Unwired Planet's website to access and download additional information about Unwired Planet's patents and its enforcement actions.

10. I used the publicly-available materials on Unwired Planet's website to better understand its litigation and licensing strategy, its history of enforcement actions and the current status of those actions, and the parties who have taken licenses to Unwired Planet's patents. I have downloaded and reviewed the Website Terms and Conditions on Unwired Planet's website. A true and correct copy of those Terms and Conditions are attached hereto as Exhibit E.

11. All of my actions in accessing and downloading materials from Unwired Planet's website were taken on Square's behalf and were within the scope of my duties.

12. As IP Counsel, I also have primary responsibility for working with outside counsel in negotiating protective orders that govern access to Square's source code during discovery. It is

3

important to Square that such protective orders provide strong protections. For example, those protective orders should include special protections for source code requiring that outside counsel may only view Square's source code using a special computer, located in San Francisco, that is locked down to prevent unauthorized copying of, access to, or printing of source code.

I declare under penalty of perjury under the laws of California and the United States of America that the foregoing is true and correct.

EXECUTED this 20th day of December, 2013, at  San Francisco, CA

_____
Kirupa Pushparaj