W. WEST ALLEN
Nevada Bar No. 5566
wallen@lrrlaw.com
LEWIS ROCA ROTHGERBER LLP
3993 Howard Hughes Parkway, Suite 600
Las Vegas, Nevada 89109
Telephone: (702) 949-8200
Facsimile: (702) 949-8398

E. LEIF REID
Nevada Bar No. 5750
lreid@lrrlaw.com
LEWIS ROCA ROTHGERBER LLP
50 West Liberty Street
Suite 410
Reno, NV 89501-1922
Telephone: (775) 321-3415
Facsimile: (775) 823-2929

THEODORE J. ANGELIS,
Admitted pro hac vice
theo.angelis@klgates.com
DOUGLAS B. GREENSWAG
Admitted pro hac vice
douglas.greenswag@klgates.com
K&L GATES LLP
925 4th Avenue, Suite 2900
Seattle, WA 98104
Telephone: (206) 370-8101
Facsimile: (206) 370-6006

*Attorneys for Defendant Square, Inc.*

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

RENO DIVISION

| | |
|---|---|
| UNWIRED PLANET LLC, a Nevada limited liability company<br><br>Plaintiff,<br><br>vs.<br><br>SQUARE, INC., a Delaware corporation<br><br>Defendant. | CASE NO. 3:13-CV-00579-RCJ-WGC<br><br>**DECLARATION OF THEODORE J. ANGELIS IN SUPPORT OF DEFENDANT SQUARE, INC.'S MOTION TO TRANSFER** |

1

I, Theodore J. Angelis, declare as follows:

1. I am an attorney at the law firm of K&L Gates LLP. I am counsel for Defendant Square, Inc. ("Square") in the above-captioned matter. Unless otherwise stated, the matters contained in this declaration are of my own personal knowledge and, if called as a witness, I could and would testify to them.

2. I have visited Unwired Planet's website, at <unwiredplanet.com>, and reviewed the content of that website. I also asked the computer forensics specialists at my law firm to capture a copy of the website. In this declaration, I provide relevant excerpts of the website as exhibits.

3. A true and correct copy of the home page of Unwired Planet's website is attached hereto as Exhibit A.

4. On the homepage, under the heading "Valuable Technology," Unwired Planet states that it "established many of the foundational patents that allow mobile devices to connect to the Internet." Unwired Planet invites users to click on a prominent "Learn More" icon, which takes the user to a webpage on which there is a link to Unwired Planet's list of more than 2,400 patents and patent applications. The "Technology" tab on the top of the homepage also leads to the same webpage, on which there is a link to Unwired Planet's list of more than 2,400 patents and patent applications. On that same page (and on its homepage), Unwired Planet describes "The Business of Intellectual Property," and it explains that it is "pursuing a multi-pronged patent monetization strategy, which ranges from direct licensing of its patents, litigation, and partnering with an Intellectual Property specialist." In addition, on the homepage, there is a link to an article by Alan Minsk in which he elaborates on the homepage's statement that Unwired Planet's "Patents Themselves Are Products." A true and correct copy of that webpage, along with Minsk's article, is attached hereto as Exhibit B. A true and correct copy of Unwired Planet's list of patents and patent applications from Unwired Planet's website is attached hereto as Exhibit C.

5. On its website, Unwired Planet maintains various press releases that refer to its patent litigation enforcement actions. One of those press releases, dated September 20, 2012, announces Unwired Planet "filed patent infringement complaints against Apple Inc. and Google Inc. in the U.S.

District Court for the District of Nevada." A true and correct copy of that press release is attached hereto as Exhibit D.

6. Another press release on Unwired Planet's website, dated October 21, 2013, announces the filing of this case. A true and correct copy of that press release is attached hereto as Exhibit E.

7. A true and correct copy of the terms and conditions posted on Unwired Planet's website as of November 21, 2013 is attached hereto as Exhibit F.

8. On its webpage, Unwired Planet also has a "blog" that contains information related to its patent infringement actions. The blog contains summaries of the litigation, and it includes, among other things, copies of (and descriptions of) this Court's orders in *Unwired Planet LLC v. Apple, Inc.*, No. 3:12-cv-00505-RCJ-VPC (D. Nev.) ("Apple Action") and *Unwired Planet LLC v. Google Inc.*, No. 3:12-cv-00504-LRH-VPC (D. Nev.) ("Google Action"). One of the blog posts, from September 3, 2013, comments on this Court's transfer order in the Apple Action. A true and correct copy of the blog posts regarding the Apple Action, Google Action, and this Court's orders in those actions, including this Court's order transferring the Apple Action to the Northern District of California, are attached hereto as Exhibit G.

9. I have accessed and reviewed the docket in the Apple Action. Based on my review of that docket, I understand that Apple filed a motion to transfer the Apple Action to the Northern District of California. I have reviewed that motion along with the supporting declarations and exhibits, which reflect that Apple is headquartered in Cupertino, California, which is in the Northern District of California, and the witnesses and evidence relevant to that action are located in the Northern District of California. A true and correct copy of the Declaration of Mark Buckley filed in support of Apple's motion to transfer the Apple Action to the Northern District of California is attached hereto as Exhibit H. A true and correct copy of this Court's Order transferring the Apple Action to the Northern District of California is attached hereto as Exhibit I.

10. I have accessed and reviewed the docket in the Apple Action after this Court transferred it to the Northern District of California. A true and correct copy of the docket in the

3

Apple Action, Northern District of California Case Number 4:13-cv-04134-YGR is attached hereto as Exhibit J.

11. I have accessed and reviewed the docket in the Google Action. Based on my review of that docket, I understand that Google filed a motion to transfer the Google Action to the Northern District of California. I have reviewed that motion along with the supporting declarations and exhibits, which reflect that Google is headquartered in Mountain View, California, which is in the Northern District of California, and the witnesses and evidence relevant to that action are located in the Northern District of California. I understand that Google filed a motion for reconsideration of that order. A true and correct copy of the Declaration of Abeer Dubey filed in support of Google's motion to transfer the Google Action to the Northern District of California is attached hereto as Exhibit K.

12. I have conducted Internet research regarding Openwave Systems, Inc. ("Openwave") and its related companies. Those companies have been discussed at length in prior declarations submitted to this Court, and as a result, I collected documents previously submitted to the Court as the validity and accuracy of those documents appears not to have been questioned by Unwired Planet. Based on the previously submitted documents, I understand that Openwave's headquarters were located in Redwood City, California. Attached hereto as Exhibit L is a true and correct copy of Openwave Systems Inc.'s About Us webpage from June 12, 2013, stating that its headquarters were located in Redwood City, California. I understand that Openwave Systems Inc. merged into Unwired Planet, Inc. in April 2012, at which point it spun off all of its non-patent assets and operations. A true and correct copy of the Certificate of Ownership and Merger is attached hereto as Exhibit M. I further understand that Unwired Planet Inc. was located in Redwood City, California until at least September 19, 2013, when it announced its move to Reno, Nevada. Attached hereto as Exhibit N is a true and correct copy of the September 19, 2013 press release from Unwired Planet announcing its move and a copy of the information from the California Secretary of State showing that, as of January 21, 2013, Unwired Planet was listed as having an address in Redwood City, California. I also understand that certain companies spun off of Openwave (now Unwired Planet Inc.). One of those companies is Openwave Messaging, Inc., which is based in Redwood City, California.

Attached hereto as Exhibit O is a true and correct copy of information from the California Secretary of State showing that, as of January 21, 2013, Openwave Message, Inc. listed an address in Redwood City, California. Another such company was Openwave Mobile, Inc. Attached hereto as Exhibit P is a true and correct copy of information from the California Secretary of State showing that, as of January 21, 2013, Openwave Mobility, Inc. listed an address in Redwood City, California.

13. I have conducted Internet research regarding the location of Unwired Planet's co-General Manager of IP, Daniel Mendez. According to my research, Mendez currently owns property in Atherton, California, which is located at 76 Lilac Drive in the Northern District of California. A true and correct copy of the real estate listing for Mendez's house in Atherton, California is attached hereto as Exhibit Q. Based on Unwired Planet's website and my Internet research, Michael C. Mulica is a member of Unwired Planet's board of directors and its former president and chief executive officer. Based on my Internet research, Mulica appears to reside in, own property in, and/or otherwise maintain strong ties to the San Francisco Bay Area.

14. I have conducted Internet research regarding the location of Unwired Planet's co-General Manager of IP, Tim Robbins. According to my research, Robbins lives in and owns property in Menlo Park, California. A true and correct copy of Robbins' Linked In profile showing his Menlo Park address and property ownership information is attached hereto as Exhibit R.

15. A true and correct copy of an article entitled "Senate Logjam on Judicial Confirmations Creates Judge Shortage in Nevada" dated February 18, 2013 that in the *Las Vegas Sun* is attached hereto as Exhibit S. I have conducted Internet research and have learned that there is still a vacancy on the Nevada District Court.

16. A true and correct copy of an article entitled *Judicial Emergency Declared on Federal Bench in Nevada*, by Carri Geer Theveno dated March 5, 2012 in the *Las Vegas Review Journal* is attached hereto as Exhibit T.

17. A true and correct copy of the Federal Judicial Caseload Statistics showing the median time from filing to disposition for the twelve month period ending March 31, 2013 is attached hereto as Exhibit U.

18. I have conducted Internet research regarding the current location of the three named inventors of U.S. Patent Nos. 7,711,100 ("the '100 Patent"), 7,376,433 ("the '433 Patent"), and 8,275,359 ("the '359 Patent") (collectively, the "Asserted Patents").

19. Based on my research, it appears that Charles L. Dennis, the named inventor of the '100 Patent, is currently located in Woodinville, Washington.

20. Based on my research, it appears that David Hose, the named inventor on the '433 Patent, is currently located in Boulder, Colorado.

21. Based on my research, it appears that Mark Drennan, the named inventor of the '359 Patent, is currently located in Orlando, Florida.

22. During prosecution of the patent applications that ultimately led to two of the three patents at issue in this case—the '359 Patent and the '100 Patent—Openwave asserted that its invention occurred prior to the filing date of the respective applications in order to overcome prior art. True and correct copies of relevant portions from the prosecution histories are attached hereto as Exhibit V. At trial, Square will present evidence it develops that undercuts Openwave's assertions regarding the relevant conception dates.

23. On December 17, 2013, I contacted Martin McKendry, who I understand was formerly Senior Vice President of Engineering at Openwave from 2008 to 2011 and now lives in San Carlos, California. I spoke with McKendry on December 18, 2013. During our conversation, McKendry explained that while at Openwave he supervised 300 engineers in California, Denver, Boston, Ireland, and India, and he had responsibility, for example, for instructing the engineers about the $1,000 bounty Openwave paid for inventions that became patents. He also explained that Cordeiro managed the patent prosecution process. In a follow-up communication, McKendry noted that he had followed developments in Unwired Planet's litigation by reviewing the blog at <unwiredplanet.com>. He also reported that when he was with Openwave, it had no presence in Nevada. He mentioned that all of Openwave's local operations were in Redwood City, California. McKendry indicated that he would not commit to traveling voluntarily to the District of Nevada to testify at trial in this action at Square's request. He said that he "can't see why [he] would."

6

24. On December 17, 2013, I contacted Karen Willem, who I understand was Chief Financial Officer for Openwave from 2008 to 2010. Willem's area code and Linked In profile indicate that she works in the San Francisco Bay Area. I left a voicemail for Willem at her office with iPass Inc. I contacted Willem again on December 19, 2013. Willem returned my call, and we talked about her role as CFO at Openwave. Willem confirmed that she will not voluntarily travel to Reno to testify at trial at Square's request. As she said, "I'm not going to commit to go to Reno."

25. On December 17, 2013, I spoke with Bruce Posey, who I understand was formerly General Counsel at Openwave from 2009 to 2010 and currently works at Qualys in the San Francisco Bay Area. Posey explained that he supervised the work of David Cordeiro, who managed patent prosecution and licensing during the time Posey served as General Counsel. (Posey did not personally manage those tasks). During our conversation, Posey indicated that he would not commit to traveling voluntarily to the District of Nevada to testify at trial in this action. As he said, "If I had a choice, I would love not to have to go to Reno."

26. On December 17, 2013, I contacted David Cordeiro, who I understand was Chief IP Counsel for Openwave from 2009 to 2011, and who Posey mentioned as managing the patent prosecution and licensing process. Cordeiro's phone number, address on file with the California State Bar Association, and his Linked In profile all indicate that he works and resides in the San Francisco Bay Area. I left a message for Cordeiro at the phone number he provided to the State Bar of California. I also sent an email to the email address he provided to the State Bar of California. I attempted to contact Cordeiro again on December 19, 2013 at 10:10 a.m. by email. Counsel for Unwired Planet, Brett Shuman, sent me an email at 11:38 a.m. on December 19, 2013 informing me that his firm (Morgan, Lewis & Bockius LLP) is representing Cordeiro and asked that we refrain from contacting him regarding this action. I sent an email to Shuman at 11:44 a.m. on December 19, 2013 confirming that we will halt all efforts to contact Cordeiro. A true and correct copy of those series of emails is attached hereto as Exhibit W.

27. On December 17, 2013, I contacted Greg Wrenn, who I understand was formerly General Counsel at Openwave from 2004 to 2006 and now works in the San Francisco Bay Area for Support.com. I also understand that Mr. Wrenn signed a statement of assignee and power of attorney

7

on behalf of Openwave, during the prosecution of the '100 Patent. During our conversation, Wrenn described his role in supervising general technology licensing as part of deals Openwave entered into with parties in the telecommunications space. He explained his role in supervising the work of Alan Minsk, who managed patent prosecution and licensing during the time Wrenn served as General Counsel. (Wrenn did not personally manage those tasks). Wrenn indicated that he was not willing to commit to traveling voluntarily to the District of Nevada to testify at trial in this action at Square's request. In particular, he said, he "would prefer" to be deposed in the Bay Area and that Reno was not as convenient as other places for his deposition or trial testimony.

28. On December 17, 2013, I contacted Jeff Li who I understand was General Counsel of Openwave from 2005 to 2008. The information Li provided to the California State Bar Association and his Linked In profile indicate that he works in the San Francisco Bay Area. I left Li a voicemail message at his office at Agilent Technologies. I did not receive a response. After subsequently receiving an email from Brett Schuman, counsel for Unwired Planet, requesting that I not attempt to contact any former General Counsel, I ceased my efforts to reach Li. Mr. Li subsequently contacted me on December 20, and he indicated that a one-day trip to Reno would not be "that big a deal for me." Li did not, however, commit to traveling voluntarily to the District of Nevada to testify at trial in this matter at Square's request.

29. On December 17, 2013, I contacted Henry R. "Hank" Nothhaft, who I understand was formerly a member of Openwave's board of directors from 2011 to 2013 and has extensive knowledge of patent licensing issues. Nothhaft's area code and Linked In profile indicate that he lives in the San Francisco Bay Area. I left a message for Nothhaft, which Nothhaft returned during the morning of December 18. I left another message for Nothhaft during the evening of December 18. I did not hear a response, so I left another message for Nothhaft on December 19, 2013 at about 2:30 p.m., in which I once again explained that I would like to talk to him about whether he would commit to travel to traveling voluntarily to the District of Nevada to testify at trial in this matter at Square's request. Nothhaft responded by voicemail, and he told me he was "certainly not willing to testify" for any party in the case, and he was "certainly unwilling to travel to Nevada under any circumstances."

30.     On December 17, 2013, I contacted Jerry Held, who I understand was formerly a member of Openwave's board of directors from May 2005 to November 2012. The information on Held's Linked In profile indicates that he works in the San Francisco Bay Area. I contacted Held through the website for his personal consulting company, Held Consulting, LLC. I received confirmation that my email was delivered, but I have not received a response from Held. I attempted to contact Held again by email on December 19, 2013. I did not receive a response. I therefore have concluded it is unlikely that Held will commit to traveling voluntarily to the District of Nevada to testify at trial in this matter at Square's request.

31.     On December 17, 2013, I contacted Mohan Sadashiva, who I understand was Chief Product Strategist for Openwave from 1999 to 2004. Sadashiva's area code and his Linked In profile indicate that he works in the San Francisco Bay Area. I left a voicemail for Sadashiva at his office with Narus, Inc. I did not receive a response. I attempted to contact Sadashiva again on December 19, 2013. I once again left a message but did not receive a response. I therefore have concluded it is unlikely that Sadashiva will commit to traveling voluntarily to the District of Nevada to testify at trial in this matter at Square's request.

32.     On December 17, 2013, I contacted Alan Black, who I understand was Chief Financial Officer for Openwave from 1997-2003. Black's area code and Linked In profile indicate that he works in the San Francisco Bay Area. I left a voicemail for Black at his office with Zendesk, Inc. I have not received a response. I attempted to contact Black again on December 19, 2013. I once again left a message but did not receive a response. I therefore have concluded it is unlikely that Black will commit to traveling voluntarily to the District of Nevada to testify at trial in this matter at Square's request.

33.     Based on my research of Openwave and potential witnesses relevant to this matter, Sean MacNeil and Alan Minsk may be potential witness. Sean MacNeil was the Vice President of Global Services and Support at Openwave and appears to reside in the Los Angeles area. MacNeil signed a statement of assignee, which was filed with the USPTO during the prosecution of the '100 Patent. Alan Minsk was Director and Patent Counsel at Openwave from 1999 to 2006, was involved

in the prosecuted the '100 Patent and '433 Patent, and it appears that Minsk is currently located in the Seattle, Washington area.

34. On December 18, 2013, I received an email from Brett Schulman, counsel for Unwired Planet. I responded that same day. Schulman responded to me on December 19, 2013. A true and correct copy of email those emails is attached hereto as Exhibit X.

I declare under penalty of perjury under the laws of Washington and the United States of America that the foregoing is true and correct.

EXECUTED this 20th day of December, 2013, at Seattle, Washington

_____
Theodore J. Angelis