DANIEL JOHNSON, JR.  (*pro hac vice*)
CA State Bar No. 57409
djjohnson@morganlewis.com
BRETT M. SCHUMAN  (*pro hac vice*)
CA State Bar No.  189247
bschuman@morganlewis.com
JASON E. GETTLEMAN  (*pro hac vice*)
CA State Bar No. 269733
jgettleman@morganlewis.com
MORGAN, LEWIS & BOCKIUS LLP
2 Palo Alto Square
3000 El Camino Real, Suite 700
Palo Alto, CA  94306
Tel:     650.843.4000
Fax:    650.843.4001

MICHAEL D. ROUNDS
Nevada Bar No. 4734
mrounds@watsonrounds.com
ADAM K. YOWELL
Nevada Bar No. 11748
ayowell@watsonrounds.com
WATSON ROUNDS
5371 Kietzke Lane
Reno, NV  89511-2083
Tel:     775.324.4100
Fax:    775.333.8171

Attorneys for Plaintiff
UNWIRED PLANET LLC

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| **UNWIRED PLANET LLC, a Nevada limited liability company,**<br><br>             **Plaintiff,**<br><br>      **v.**<br><br>**SQUARE, INC., a Delaware corporation,**<br><br>             **Defendant.** | Case No. **3:13-CV-00579-RCJ-WGC**<br><br>**JOINT MEMORANDUM IDENTIFYING AREAS IN DISPUTE WITH REGARD TO PHASE I DISCOVERY** |

Pursuant to the Court's February 27, 2014 Order (Dkt. 42), and to supplement the parties' Proposed Discovery Plan and Proposed Scheduling Order, Plaintiff UNWIRED PLANET LLC ("Unwired Planet" or "Plaintiff") and Defendant SQUARE, INC. ("Square" or "Defendant") submit the following Joint Memorandum Identifying Areas in Dispute with Regard to Phase I Discovery ("Joint Memorandum").

In the Joint Rule 26(f) Report and Discovery Plan and Proposed Scheduling Order, and at the hearing conducted on February 27, 2014, Defendant Square argued that there is good cause for the Court to enter an order allowing for discovery to be conducted in phases.  Plaintiff Unwired Planet argued that good cause does not exist to phase discovery and discovery should proceed pursuant to the standard discovery rules governed by Federal Rules of Civil Procedure and the District of Nevada Local Rules.  The Court subsequently ruled:  "After hearing argument the court embraces defendant Square's concept of phased discovery."

The Court directed the parties to meet and confer to determine what "discovery is necessary for Phase I discovery (*i.e.*, what basic discovery is necessary to prepare for the *Markman* Hearing and the initial settlement conference)."  The Court also directed the parties to submit this Joint Memorandum "identifying the areas of dispute with regard to Phase I."  Section A of this Joint Memorandum identifies the discovery the parties agree is appropriate for Phase I. Section B identifies the areas of dispute with regard to Phase I.

**A.** **Discovery the Parties Agree is Basic Discovery Necessary To Prepare for the *Markman* Hearing and the Initial Settlement Conference**

    **1.** **Documents and Things the Parties Agree Will be Produced in Phase I**

In addition to the documents the parties are required to produce under the Patent Local Rules, the parties agree that the following documents and things shall be produced during Phase I:

    a.    Damages information set forth in General Order 14-3 (E.D. Tex. Feb. 25, 2014)

with respect to transactions involving Square Wallet, *i.e.*:

Square shall provide, within thirty (30) days of entry of the Court's scheduling order, summary information regarding the total volume, in the United States, of purchases made using the accused products and the revenues to Square from those sales.

b.       Depositions**:** The parties agree to the Phase I deposition of each expert on which the opposing party relies in support of its claim constructions, with the understanding that subsequent depositions after Phase I are permissible.

**B.       Disputes regarding Phase I Discovery**

The parties' areas of dispute with respect to Phase I discovery are as follows.

**1.       Overview of Unwired Planet's Position**

Unwired Planet submits that Square failed to establish good cause for any phasing of discovery, much less the crabbed approach to discovery that it proposes for this case.  Square's *sui generis* proposal for managing discovery in this case radically departs from the well-trodden path set by the Federal Circuit and other district courts.

To the extent the Court is inclined to phase discovery in this case, Unwired Planet suggests the Court follow the approach set forth in the Model Order Regarding E-discovery in Patent Cases (the "Model Order") promulgated by the Federal Circuit Advisory Council.  The Model Order requires that the parties exchange so-called "core documentation," *i.e.*, "documentation about the patents, the prior art, the accused instrumentalities, and the relevant finances," early in the patent litigation.  *See* Ex. 1.  The Model Order states that "the Court encourages prompt and early production of this information to promote efficient and economical streamlining of the case."  *Id.*  Following the production of this core documentation, the Model

Order sets forth a process for targeted discovery of emails and other electronically stored information ("ESI").  In short, if the Court is inclined to phase discovery at all, it should follow the carefully considered direction embodied in the Federal Circuit Advisory Council's Model Order.

Unwired Planet takes particular umbrage with Square's proposal to limit early damages discovery in this case.  Square opposes producing the very damages information that will allow the parties to be able to have a fruitful initial settlement conference.  As Chief Judge Rader observed, "[t]he parties also benefit from early damages discussions and disclosures because it can provide a realistic evaluation of both Defendant's exposure and Plaintiff's damages calculation and further promote early and effective mediation."  *See* Ex. 2 ("The State of Patent Litigation," Address of Chief Judge Randall R. Rader of the United States Court of Appeals for the Federal Circuit, E.D. Tex. Judicial Conf., Sept. 27, 2011)); *see also* Ex. 3 *(EON Corp. IP Holding LLC v. Sensus USA Inc., et al.,* No. C-1201011 EMC (EDL) 3:12-cv-01011 *(*N.D. Cal Mar. 8, 2013) at 2*.*  Chief Judge Rader continued and noted that "[t]his inquiry can occur at the onset of the case" and that the knowledge obtained from the damages discovery will permit a judge to "adjust [the] timing and procedures of the case" accordingly.  *Id.*  Unwired Planet seeks only that damages information which will permit Unwired Planet—and the Court—to properly evaluate this case.

### 2.      Overview of Square's Position

Unwired Planet has not embraced the Court's ruling regarding phased discovery, which limits discovery during Phase I to "basic discovery . . . necessary to prepare for the *Markman* Hearing and the initial settlement conference."  Square agrees that, in addition to the disclosures provided under the local rules, Square should provide summary sales and revenue data and, if needed after Unwired Planet reviews the documents Square produces, deposition testimony

regarding the documents produced.  Unwired Planet significantly overreaches, however, in arguing that the Court's order encompasses extensive, general discovery.  In fact, Unwired Planet's attempt to construe the Court's order as encompassing a broad range of general discovery demonstrates the merit of Square's argument that phased discovery is necessary to minimize discovery disputes and ensure that this case moves forward in an efficient and cost-effective manner.

### 3.    The Parties' Positions Regarding Disputed Phase I Discovery

### a.    Non-Expert Depositions.

#### (i)    Unwired Planet's Position

Unwired Planet believes that the parties should be permitted to conduct depositions regarding documents produced by the parties during Phase I discovery, i.e., (a) the design and operation of the Accused Products, (b) the sales, revenues and profits from the Accused products and other Square products that are or may be sold or used in conjunction with the Accused Products, and (c) any other documents and things that may be produced during Phase 1 discovery.  These depositions may include Fed. P 30(b)(6) witnesses specified by the deponent party and may also include depositions specified by the deposing party.

Square flatly rejected this reasonable proposal.  According to Square, depositions are unnecessary because "documents it produces pursuant to Local Rule 16.1-9(a) will be self-explanatory."  This position is entirely self-serving and prejudicial to Unwired Planet.  As a threshold matter, depositions in response to discovery are generally necessary in patent cases— and indeed in most civil cases— to resolve confusion as to the documents produced.  Moreover, Square's position is highly prejudicial to Unwired Planet because it denies Unwired Planet the ability to depose Square witnesses about what the documents say.

Square counter proposes that in lieu of establishing some reasonable number of depositions regarding Phase I documents, that "the parties meet and confer as to the nature of the testimony sought …[and] if the parties are unable to agree, they will promptly raise the dispute with the Court."  This proposal allows Square to control whether any depositions take place if it, unilaterally, determines that Unwired Planet *should know* what the documents mean.  Square, and its witnesses, are in sole possession of these documents and are the only ones with knowledge about their contents.  As such, it is almost guaranteed that Unwired Planet is going to have questions.  Unwired Planet is entitled to answers.

(ii)    <u>Square's Position</u>

Depositions of witnesses other than the expert each party relies on for claim construction should be unnecessary during Phase I.  For example, Unwired Planet seeks depositions regarding the operation of Square's products.  Square believes that the documents it produces pursuant to Local Rule 16.1-9(a) will be self-explanatory.  However, if Unwired Planet concludes—after reviewing the documents produced pursuant to Civil Local Rule 16.1-9(a)—that it needs deposition testimony to understand such documents, Square proposes that the parties meet and confer as to the nature of the testimony sought and whether such deposition should be noted pursuant to Fed. R. Civ. P 30(b)(6).  If the parties are unable to agree, they will promptly raise the dispute with the Court.

**b.**    **General Financial Discovery and Licenses**

(i)  <u>Unwired Planet's Position</u>

Patent damages are typically determined by applying the multi-factor test set forth in *Georgia-Pacific Corp. v. U.S. Plywood Corp.* ("Georgia-Pacific").  *Georgia-Pacific Corp. v. United States Plywood Corp.*, 318 F.Supp. 1116 (S.D.N.Y. 1970).  In *Georgia-Pacific*, the court created an approach which has now become the most common way to compute reasonable

royalty damages.   In general, to determine reasonable royalty damages, courts consider a "hypothetical negotiation," between a "willing licensor" (patent owner) and a "willing licensee" (infringer), at the time the infringement began.  The court listed fifteen factors to be considered. *Id*. at 1120.    In most cases, the *Georgia-Pacific* methodology attempts to set a percentage royalty rate, which is then multiplied by the dollar amount of infringing sales to calculate the dollar amount of "reasonable royalty" damages.

Relevant license agreements are highly probative and relevant evidence under a Georgia-Pacific analysis.  *See Georgia-Pacific*, 318 F.Supp. at 1120 (factors 1 and 2 explore "royalties received by the patentee for the licensing of the patent in suit, proving or tending to prove an established royalty" and "rates paid by the licensee for the use of other patents comparable to the patent in suit.") (emphasis added); *see also Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1325 (Fed. Cir. 2009); *ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 870 (Fed. Cir. 2010). Georgia-Pacific factors "1 and 2—looking at royalties paid or received in licenses for the patent in suit or in comparable licenses—remain valid and important factors in the determination of a reasonable royalty rate." *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1318 (Fed. Cir. 2011).

Accordingly, Unwired Planet is entitled to discovery in Phase I regarding Square's license agreements related to technologies used in the accused products and services, including Square Wallet, Square Register, Square Market, and any other Square product used in conjunction with any of the accused products.  This discovery is necessary to enable Unwired Planet to assess the potential damages available in this case.  This discovery will assist the parties in assessing potential damages and will assist the parties in reaching a settlement during the initial settlement conference.  Square incorrectly asserts that Unwired Planet seeks broad discovery regarding Square's finances and licenses.  In contrast, Unwired Planet only seeks

1    discovery relating to just those licenses involving the technology Square licensed for use in the

2    two accused products.[1]

3         Unwired Planet also is entitled to discovery in Phase I regarding Square's revenues,

4    profits and profit margins associated with the use of all accused products and services, including

5    Square Wallet, Square Register, Square Market, and any other Square product used in

6    conjunction with any of the accused products. This is critical information for purposes of

7    assessing damages. At least three of the *Georgia-Pacific* factors relate to profit information on

8    sales of accused products. *Uniloc*, 632 F.3d at 1318 (Fed. Cir. 2011) ("factor 12—looking at the

9    portion of profit that may be customarily allowed in the particular business for the use of the

10    invention or similar inventions—remain valid and important factors in the determination of a

11    reasonable royalty rate."). Early disclosure of such information will assist the parties in

12    assessing potential damages and will assist the parties in reaching a settlement during the initial

13    settlement conference. By opposing production of this critically important damages information

14    in Phase I, Square opposes producing the very damages information that will allow the parties to

15    be able to have a fruitful initial settlement conference. For example, Square is refusing to

16    produce any profit information, including, for example, net and gross profits and profit margins,

17    related to the sales of the Accused Products. Such profit information is the core of the

18    "analytical approach" for computing reasonable royalty damages, as approved by the Federal

19    Circuit. *See TWM Mfg. Co., Inc. v. Dura Corp.*, 789 F.2d 895, 899 (Fed. Cir. 1986) (upholding

20    damages judgment based on the analytical approach, which "subtracted the infringer's usual or

---

[1] If Square produces its license agreements, Unwired Planet is willing to produce its license agreement relating to the Asserted Patents, either individually, or as a part of a larger patent portfolio. Square's proposal severely limits both parties ability to properly evaluate the potential value of the technology and the case, greatly hindering the parties' ability to reach a settlement, the primary purpose of the initial settlement conference. In contrast, Unwired Planet's proposal facilitates such a settlement by preventing anchors by either party which are unsupported by previous licenses.

JOINT MEMORANDUM IDENTIFYING AREAS IN DISPUTE WITH REGARD TO
PHASE I DISCOVERY

acceptable net profit from its anticipated net profit realized from sales of infringing devices");
*Energy Transp. Group, Inc. v. William Demant Holdings A/S WDH Inc.*, 697 F.3d 1342, 1356-57
(Fed. Cir. 2012) (upholding damages judgment primarily because plaintiff's damages expert
performed the analytical approach by "compar[ing] the average expected profit margin on the
infringing products . . . to the industry expected profit margin").

Square attempts to limit the accused products and services to just Square Wallet.  It is
highly inappropriate for Square to unilaterally limit its discovery obligations when Unwired
Planet has accused Square Wallet, Square Register, Square Market, and any other Square product
used in conjunction with any of the accused products.  Unwired Planet has accused all Square
products and services, including Square Wallet, Square Register, and Square Market.  *See* First
Am. Comp., D.I. 30, at 5-6 (accusing "Mobile App Systems and/or Services (*including* Square
Wallet, Square Register, and Location Services including Local Search), Servers…and Mobile
Devices…." as infringing all three asserted patents) (emphasis added); Initial Disclosure of
Asserted Claims and Infringement Contentions, Ex. 4, at 2-3 (accusing "Square Wallet systems
and/or services, Square Register systems and/or services, servers (including servers supporting
the aforementioned systems and/or services), and mobile devices (including mobile phones and
tablets with the Square Wallet and/or Square Register software installed" of infringing all three
asserted patents).

(ii) Square's Position

Unwired Planet seeks broad discovery regarding Square's finances and licenses.  At the
February 27, 2014 hearing, however, the parties and the Court discussed an exchange of
financial *summaries*, as described in the Eastern District of Texas' newly issued General Order
14-3.  The Court subsequently ordered that Phase I discovery is limited to "basic discovery" that
is necessary to prepare for the settlement conference.  Accordingly, Square has agreed to

1    exchange the summary financial information regarding the accused products described in the

2    Eastern District of Texas' General Order 14-3.  Extensive, general discovery regarding Square's

3    finances and non-accused products, however, is not needed to prepare for the initial settlement

4    conference and is not appropriate for Phase I discovery.

5           Unwired Planet's infringement contentions accuse *only* the transactions in which a

6    customer using Square Wallet "checks in" to a merchant running Square Register.  (A customer

7    can only "check-in" and have his or her name and photograph displayed if the customer pays

8    using Square Wallet).  The excerpts below, from Unwired Planet's infringement contentions

9    regarding the '359 Patent, confirm that Unwired Planet only accuses transactions in which a

10   customer "checks in" and "pays with [her] name" via Square Wallet:

| Limitation | Infringement |
|---|---|
| receiving a notification message from the notification server via the wireless communication network, the notification message including a piece of content associated with the event; and | The Square Register application receives a notification message from the notification server via the wireless communication network, the notification message including a piece of content associated with the event.<br><br>For example, the Square Register application receives a notification message that a potential customer has checked in or the customer wishes to pay.  The message includes the customer's name, photograph, and identifying information to allow payment. Square register displays a count of the number of customers who have checked as a "count" icon, as shown below:<br><br><br><br>*See, e.g.,* https://squareup.com/help/en-us/article/3869-accept-payments-on-the-ipad#square-wallet<br><br>*See, e.g.,* https://squareup.com/help/en-us/article/5178-accept-square-wallet-payments |
| displaying the piece of content associated with the event to a user of the wireless device. | The Square Register application displays the piece of content (*e.g.,* the customer's name and photograph) to the user of the wireless device.  The application displays, for example, a list of Individual Square Wallet customers with small "thumbnail" images, and, if one of those customers is chosen, a larger version of their photo is displayed to permit visual authentication: |

| Limitation | Infringement |
|---|---|

Unwired Planet's Infringement Contentions, Ex. D., at 3-4.

In contrast, Unwired Planet does not (and could not) accuse Square of infringing when a customer walks into a store and pays a Square Register merchant by offering his or her credit card.  Accordingly, financial information regarding those transactions is not relevant here and is not "basic discovery" that is "necessary to prepare for . . . the initial settlement conference."

Nor does Unwired Planet need information regarding Square's licenses (if any exist) to prepare for the initial settlement conference.  Analysis of licenses, and the facts surrounding them, is the task of damages experts and must occur in the context of complex apportionment and royalty analyses.  Such discovery is not "necessary to prepare for . . . the initial settlement conference" and should be deferred to Phase II.

      c.     **Documents Regarding Square's Knowledge of Unwired Planet's Patents**

      (i)  <u>Unwired Planet's Position</u>

Unwired Planet is entitled to discovery regarding Square's pre-lawsuit knowledge of the Asserted Patents.  Discovery relating to Square's knowledge of the three Asserted Patents, including when that knowledge was first obtained, is necessary for Phase I as it will determine for which patents, infringement, if any, would be willful.  This discovery includes correspondence regarding the Asserted Patents and any evaluations or analyses of the patents or Square's potential infringement of the Asserted Patents.  This discovery is required in Phase I to

allow the parties to determine the proper range of potential damages which will assist the parties in reaching a settlement.

Square says below that: "Unwired Planet admitted that such discovery is not related to claim construction."  That does not mean such discovery should not be available now.  This discovery is relevant—and indeed necessary—for the initial settlement conference.  Unwired Planet asserts that Square willfully infringes at least two of the three asserted patents – and discovery could provide a basis for a willful infringement claim as to the third asserted patent. Square denies that allegation and opposes producing the discovery that would resolve the issue. If the parties are aware of when Square first became aware of its infringement of the Asserted Patents, the parties will be able to focus the initial settlement conference on the proper damages amount based on willfulness.

## (ii) <u>Square's Position</u>

Unwired Planet seeks documents that "include, but are not limited to, internal correspondence regarding the Asserted Patents and any evaluations or analyses of the Asserted Patents or the Accused Products' potential infringement of the Asserted Patents."  During the February 27 hearing, Unwired Planet admitted that such discovery is *not* related to claim construction.  Nor is it "necessary to prepare for . . . the initial settlement conference."  To the contrary, this information is general discovery regarding Unwired Planet's indirect infringement claims, which the Court deferred to Phase II.  In arguing for broad discovery regarding its indirect infringement and willful infringement claims, Unwired Planet is (in essence) arguing it needs broad, general discovery to prepare for the first of three settlement conferences.  That argument is contrary to the Court's order phasing discovery and misstates reality.  "[B]asic discovery" regarding sales and revenue provides both parties what they need to prepare for the

initial settlement conference."[2]

### d.   Square's Patents and Patent Applications

#### (i)   Unwired Planet's Position

Unwired Planet is entitled to discovery regarding Square patents and patent applications covering the accused products (Square Wallet and Square Register).  Discovery of patents and patent applications filed by Square covering these products should be allowed in Phase I as it will permit the parties to determine which claim terms in dispute Square has focused on in its own patent applications and the arguments Square has made regarding those terms.  This discovery will permit the Court and the parties to properly frame claim construction in the context of the accused devices.  Such extrinsic evidence may be considered at the *Markman* hearing.  *See, e.g.*, *AIA Eng'g Ltd. v. Magotteaux Int'l S/A*, 657 F.3d 1264, 1274 (Fed. Cir. 2011) (considering an "introductory materials science and engineering textbook" as extrinsic evidence of the understanding of a person skilled in the art"); *Boston Scientific Corp. v. Johnson & Johnson*, C 02-00790 SI, 2006 WL 6221554 (N.D. Cal. Sept. 19, 2006) (considering, as extrinsic evidence, "several other patents involving the same technology"); *ActiveVideo Networks, Inc. v. Verizon Comm'ns Inc.*, 801 F. Supp. 2d 465, 490 (E.D. Va. 2011) (accepting Federal Communications Commission publications as relevant extrinsic evidence).  Additionally, discovery of these patents and patent applications will show whether Square has cited to any of the Asserted Patents or any other Unwired Planet patents in its own application, which, in turn goes to Square's knowledge of the Asserted Patents and Unwired Planet's willfulness claim. This discovery is required in Phase I to allow the parties to assess potential damages which will assist the parties in reaching a settlement and are thus relevant to the initial settlement conference.

---

[2] Notably, in its Amended Complaint, Unwired Planet bases its indirect and willful infringement allegations on the allegation that Square allegedly knew of two of the three asserted patents on September 26, 2013, which is three weeks before Unwired Planet filed this lawsuit.  Thus, Unwired Planet's indirect and willful infringement allegations will not substantially change the potential damages in this case.  *See* Dkt. 30 ¶ 20.

1

2

(ii) Square's Position

3

Unwired Planet seeks documents related to Square's patents and patent applications.

4

Square's patents are not at issue in the case.  They are not relevant to the *Markman* hearing or the

5

initial settlement conference.  The role of extrinsic evidence is very limited in claim construction.

6

*Phillips v. AWH Corp.*, 415 F.3d 1303, 1319-24 (Fed. Cir. 2005) (explaining that courts should

7

use special caution before consulting extrinsic evidence such as dictionaries).[3]  Square's patents

8

and patent applications, which necessarily were filed many years after the asserted patents,[4] have

9

nothing to do with the meaning the *inventors* of the asserted patents gave to the terms they used

10

in their claims.  In fact, even when two unrelated patents have "common subject matter, a

11

common inventor, and the same assignee," none of which is true here, the Federal Circuit has

12

held that those relationships are "insufficient to render particular arguments made during

13

prosecution of [one of the patents] equally applicable to the claims of [the other patent]."  *Tex.*

14

*Digital Sys., Inc. v. Telegenix, Inc.*, 308 F.3d 1193, 1211 (Fed. Cir. 2002) (quoting *Abbott Labs.*

15

*v. Dey, L.P.*, 287 F.3d 1097, 1104, 62 USPQ2d 1545, 1550 (Fed.Cir.2002)); *see also infra* pp.

16

17-18 (distinguishing *Bancorp Servs., L.L.C. v. Hartford Life Ins. Co.,* 359 F.3d 1367 (Fed. Cir.

17

2004).

18

**e.    Email and Electronic Document Discovery**

19

(i)  Unwired Planet's Position

20

21

22

23

24

---

[3] The cases Square cited prior to the Court's ruling phasing discovery, *e.g. Vivid Techs. Inc. v. Am. Sci. & Eng'g, Inc.*, 997 F. Supp. 93, 95 (D. Mass. 1997), *aff'd*, 200 F.3d 795, 803-04 (Fed. Cir. 1999); *U.S. Ethernet Innovations LLC v. Acer Inc.*, 2011 WL 2690158, at \*2 (N.D. Cal. July 8, 2011), demonstrate that the Court has authority to defer all of the discovery Unwired Planet is seeking here.

25

26

[4] Square was founded in 2009.  Unwired Patent's asserted patents claim priority to 1997, 1998, and 2006.

27

The parties agree that generalized email discovery of either party is not necessary prior to claim construction and, to the extent it would otherwise be permitted, should be stayed until Phase II.  However, Unwired Planet should be allowed to obtain targeted discovery of emails and other ESI relating to claim construction issues and the "key" terms for claim construction identified by Square.  In the Model Order, the Federal Circuit Advisory Council proposes that targeted discovery of email and ESI take place after the production of "core" discovery – but, notably, the Council does not propose delaying discovery of this information until after a Markman ruling, as Square proposes here.

By seeking to prevent this discovery until after a *Markman* ruling, Square is really trying to deprive Unwired Planet of information that could be relevant and admissible at the *Markman* hearing.  Square's position that claims are "primarily construed on the intrinsic record" ignores clear Federal Circuit guidance that "the legal function of giving meaning to claim terms *always takes place in the context of a specific accused infringing device or process*… [and] knowledge of that product or process provides meaningful context for the first step of the infringement analysis, claim construction."  *Wilson Sporting Goods Co. v. Hillerich & Bradsby Co.*, 442 F.3d 1322, 1326-27 (Fed. Cir. 2006) (emphasis added).

Further, Federal Circuit case law is unambiguous that courts may, and indeed should, consider "extrinsic evidence concerning relevant scientific principles, the meaning of technical terms, and the state of the art" during claim construction to "show what a person of skill in the art would have understood disputed claim language to mean."  *Phillips v. AWH Corp.*, 415 F.3d 1303, 1314 (Fed. Cir. 2005) (citing *Innova/Pure Water, Inc. v. Safari Water Filtration Systems, Inc.*, 381 F.3d 1111, 1116 (Fed. Cir. 2004)).  *See also Meyer Intellectual Properties Ltd. v. Bodum, Inc.*, 690 F.3d 1354, 1368 (Fed. Cir. 2012) ("To ascertain the scope and meaning of the asserted claims, we look to the claim language, the specification, the prosecution history, and any

relevant extrinsic evidence."); *AIA Eng'g Ltd. v. Magotteaux Int'l S/A,* 657 F.3d 1264, 1277 (Fed. Cir. 2011) ("We may look to extrinsic evidence 'to ensure that the court's understanding of the technical aspects of the patent is consistent with that of a person of skill in the art.'") (citing *Phillips*, 415 F.3d at 1318); *Spansion, Inc. v. Int'l Trade Comm'n*, 629 F.3d 1331, 1344 (Fed. Cir. 2010) ("[E]xtrinsic evidence . . . may also be used when given the appropriate weight by the trial court.") (citing *Datamize, LLC v. Plumtree Software, Inc.*, 417 F.3d 1342, 1348 (Fed.Cir.2005)); *Interactive Gift Exp., Inc. v. Compuserve Inc.*, 256 F.3d 1323, 1332 (Fed. Cir. 2001) ("Extrinsic evidence may always be consulted, however, to assist in understanding the underlying technology.").

Failure to consider relevant extrinsic evidence of claim meaning can constitute reversible error. *See, e.g., Bancorp Servs., L.L.C. v. Hartford Life Ins. Co.,* 359 F.3d 1367, 1375-76 (Fed. Cir. 2004) (finding that the district court's refusal to consider extrinsic evidence of the defendant's use and understanding of a claim term was error).

Finally, the District of Nevada's Local Rules contemplate the use of extrinsic evidence in claim construction.   *See* LR 16.1-14(a) (requiring, at the time the parties exchange their Preliminary Claim Constructions, each party to "designate any supporting extrinsic evidence including, without limitation, dictionary definitions, citations to learned treatises and prior art, and testimony of percipient and expert witnesses.")  Courts in this District, operating under these rules, have followed a practice of permitting extrinsic evidence in claim construction.  *See, e.g., Ferring B.V. v. Watson Labs., Inc.*, 3:11-CV-00481-RCJ, 2012 WL 2859976 (D. Nev. July 11, 2012) (refusing to strike patentee's extrinsic evidence even though patentee failed to disclose it pursuant to LR 16.1-14(a)); *see also Fortunet, Inc. v. Melange Computer Servs.*, 412 F. Supp. 2d 1071, 1075 (D. Nev. 2005) ("[T]the court may consider extrinsic evidence throughout claim

construction to understand the underlying technology") (citing *Interactive Gift Exp., Inc*., 256 F.3d at 1332).

Square attempts to restrict discovery necessary for the *Markman* hearing by alleging that "[t]he Bench/Bar committee that drafted Local Rule 16.1-9(a) designed it to provide the product information Unwired Planet needs to prepare for the *Markman* hearing." Square misleads the Court in two ways. First, Square misleads the Court by failing to note that the Bench/Bar committee designed the discovery required by Local Rule 16.1-9(a) to be concurrent with standard discovery served by the parties. Second, Square fails to note that Local Rule 16.1-9(a) was not drafted to cover discovery for the initial settlement conference, again, because the drafters anticipated this to be covered by the parties' discovery pursuant to Fed. R. Civ. P. 26, 33, 34, and 36. Far from being a ceiling for discovery as Square would assert, it was drafted to be a floor and it was presumed that the parties would request the additional discovery necessary for the *Markman* hearing as well as for the initial settlement conference.

Square has identified several "key terms" in the Asserted Patents.[5] It is disingenuous for Square to present to the Court that the outcome of the case is dictated by certain "key terms," but then deny Unwired Planet the requisite discovery related to those terms that may be relevant and admissible at the Markman hearing in this matter.

(ii)     Square's Position

---

[5] Based on the parties Rule 26(f) Discovery Hearing presentations, the following terms and topics have been identified by **Square** as "key" terms for the *Markman* hearing. By Square's own admission, email discovery on at least the following terms is necessary in Phase 1: 1) "notification message" ('359 Patent), 2) "receiving a notification message of an event" ('359 Patent), 3) "registration-based" ('359 Patent), 4) "subscription-based" ('359 Patent), 5) "correlate" ('100 Patent), 6) associating transaction amounts with users ('100 patent), 7) selecting merchants ('433 Patent), and 8)     determining which merchants to display on the screen ('433 Patent). Unwired Planet expects to provide additional terms based on discovery received from Square. Obtaining email regarding Square's understanding of these terms will allow the parties to propose proper claim constructions and to frame their claim construction arguments.

Unwired Planet overreaches in arguing that Square should produce emails containing "terms and topics" the parties identify as "key" terms for claim construction of Unwired Planet's own patents. Such email and electronic document discovery is not "basic discovery" necessary for the *Markman* hearing and is beyond the scope of information to be exchanged under Local Rule 16.1-13 to -15.

Claim terms are construed based primarily on the *intrinsic* record: the patent claims, the specification, and the prosecution history for the patent. Whether, and how, a Square employee used claim terms such as "correlating," "profile," or "event" in an email, years *after* Unwired Planet filed the asserted patents,[6] and in a different context, is wholly irrelevant to the construction of Unwired Planet's patents. Unwired Planet cites two cases that allegedly support its argument that an accused infringer's use of a disputed claim term is relevant in claim construction, but neither case supports the discovery Unwired Planet seeks. In *Bancorp Servs., L.L.C. v. Hartford Life Ins. Co.,* 359 F.3d 1367, 1375-76 (Fed. Cir. 2004), the court considered whether a very specific term "surrender value protected," was indefinite. *Id.* at 1375-76. The Federal Circuit held that, in deciding whether that term had any meaning, the District Court should have considered "evidence of defendants' knowledge and use of the term *prior to patenting*," *id.* at 1376 (emphasis added), because that evidence "is relevant to show that the term was in use and had a discernible meaning," *id.* The court elsewhere noted that it was relying on evidence regarding use of that term "*before* the priority date" of the patent at issue. *Id.* at 1375 (emphasis added). Here, in contrast, the asserted patents were filed many years before Square even came into existence. Accordingly, Square's use of the general terms at issue in this case (if any) is not relevant to how Unwired Planet used them in its claims.

---

[6] Square was founded in 2009. Unwired Patent's asserted patents claim priority to 1997, 1998, and 2006.

JOINT MEMORANDUM IDENTIFYING AREAS IN DISPUTE WITH REGARD TO PHASE I DISCOVERY
18 of 21

Unwired Planet also suggests that the email and other electronic discovery it is seeking is necessary to provide Unwired Planet information as to how the accused technology operates. However, discovery beyond documents showing the operation of the accused products—as required by LR 16.1-9(a)—is unnecessary in Phase I.  The Bench/Bar committee that drafted Local Rule 16.1-9(a) designed it to provide the product information Unwired Planet needs to prepare for the *Markman* hearing.  Specifically, Rule 16.1-9(a) requires Square to produce documents "*sufficient* to show the operation of any aspects or elements of an Accused Instrumentality."  *Id.* (emphasis added).  Such information provides all of the product information Unwired Planet needs for claim construction.

### f.     Email Between Unwired Planet and the Named Inventors

#### (i)  Unwired Planet's Position

Unwired Planet accepts Square's representation, below, that it does not intend to pursue inventor-related discovery during Phase I.

#### (ii) Square's Position

Unwired Planet has offered to produce its communications with the named inventors. Unwired Planet also has offered to make the named inventors available for deposition (provided that Square agrees that it may not depose the inventors during Phase II).  Unwired Planet's proposal reveals the problem in trying to include inventor-related discovery in Phase I.  Such discovery is not "basic discovery . . . necessary to prepare for the *Markman* hearing," and it creates duplication with the discovery that will occur in Phase II.  To focus discovery on the necessary issues at hand and to conserve resources, Square does not seek this discovery in Phase I.

1    Dated:   March 7, 2014.                   Respectfully submitted,

2
                                              WATSON ROUNDS
3

4                                              /s/ Michael D. Rounds
                                              Michael D. Rounds
5                                             Nevada State Bar No. 4734
                                              mrounds@watsonrounds.com
6                                             Adam K. Yowell
                                              Nevada State Bar No. 11748
7                                             ayowell@watsonrounds.com
                                              WATSON ROUNDS
8                                             5371 Kietzke Lane
                                              Reno, Nevada 89511
9                                             Telephone: (775) 324-4100
                                              Fax: (775) 333-8171
10
                                              DANIEL JOHNSON, JR.  (pro hac vice)
11                                            CA State Bar No. 57409
                                              djjohnson@morganlewis.com
12                                            BRETT M. SCHUMAN  (pro hac vice)
                                              CA State Bar No.  189247
13                                            bschuman@morganlewis.com
                                              JASON E. GETTLEMAN  (pro hac vice)
14                                            CA State Bar No. 269733
                                              jgettleman@morganlewis.com
15                                            MORGAN, LEWIS & BOCKIUS LLP
                                              2 Palo Alto Square
16                                            3000 El Camino Real, Suite 700
                                              Palo Alto, CA  94306
17                                            Tel:  650.843.4000
                                              Fax:  650.843.4001
18
                                              ATTORNEYS FOR PLAINTIFF
19                                            UNWIRED PLANET LLC

20

21

22

23

24

25

26

27

28

JOINT MEMORANDUM IDENTIFYING AREAS IN DISPUTE WITH REGARD TO
PHASE I DISCOVERY
20 of 21

LEWIS ROCA ROTHGERBER LLP

By */s/ Theodore J. Angelis*
W. WEST ALLEN
Nevada Bar No. 5566
wallen@lrrlaw.com
3993 Howard Hughes Parkway, Suite 600
Las Vegas, Nevada  89109

E. LEIF REID
Nevada Bar No. 5750
lreid@lrrlaw.com
LEWIS ROCA ROTHGERBER LLP
50 West Liberty Street
Suite 410
Reno, NV 89501-1922
Telephone: (775) 321-3415
Facsimile: (775) 823-2929

THEODORE J. ANGELIS
theo.angelis@klgates.com
DOUGLAS B. GREENSWAG
douglas.greenswag@klgates.com
K&L GATES LLP
925 4th Avenue, Suite 2900
Seattle, WA  98104
Telephone:  (206) 370-8101
Facsimile:  (206) 370-6006

***ATTORNEYS FOR DEFENDANT
SQUARE INC.***

**IT IS SO ORDERED:**

Dated:

_____
Hon. Robert C. Jones
United States District Court Judge